Rockingham
No. 2003-238

ALFRED L. ARCIDI, JR.

v.

TOWN OF RYE

Argued: February 5, 2004
Opinion Issued: April 5, 2004

*Nelson, Kinder, Mosseau & Saturley, P.C.,* of Manchester (*E. Tupper Kinder* on the brief and orally), for the plaintiff.

*Michael L. Donovan,* of Concord, by brief and orally, for the defendant.

DUGGAN, J. This case involves a dispute over the defendant Town of Rye's (town) use of an easement over land owned by the plaintiff, Alfred L. Arcidi, Jr. The plaintiff appeals a decision of the Superior Court (*Lewis,* J.) that the town had the right to use the easement and that the construction and use of a gravel road was within the scope of the easement. The town cross-appeals the court's ruling that the installation and use of a subsurface water line was beyond the scope of the easement. In addition, the town challenges the award of attorney's fees. We affirm in part and reverse in part.

The trial court found the following facts. The plaintiff owns a 1.38-acre parcel of land on Church Road in Rye. Located behind and adjacent to the plaintiff's property is a 14.6-acre parcel of land owned by Valley Properties, Inc. (VPI). VPI's property is the site of the vacant Farragut

Hotel. VPI has an easement by deed over the plaintiff's property for "ingress and egress by motor vehicle, foot and otherwise over a strip of land fifty (50) feet in width." The easement was intended to provide secondary access to the Farragut Hotel. The easement runs over the northerly side of the plaintiff's property from Church Road to VPI's property.

In 1990, VPI granted the town a "perpetual pump station easement," which gave the town the right to construct, operate and maintain a sewer pumping station on an 8,703 square-foot piece of the property owned by VPI. The pumping station easement is located behind the plaintiff's property. VPI also granted the town a fifty-foot sewer easement from the plaintiff's northeasterly property line to the pumping station easement. Both the pumping station easement and the sewer easement purported to convey VPI's easement over the plaintiff's property to the town.

In the summer of 1990, the town constructed a gravel access road over the plaintiff's property to the sewer pumping station site. The construction of the access road included clearing trees, ground excavation, filling wetlands, and installing culverts. The road, including the shoulders, is twenty feet wide and located in the middle of the fifty-foot easement. A subsurface water line to serve the sewer pumping station was installed under the road.

Once constructed, the town used the access road for ingress and egress from the pumping station site. This use consisted of the following: (1) regular daily use by the town sewer department to service the pump station equipment; (2) weekly use for maintenance; (3) occasional use by road crews to maintain and plow the area; and (4) occasional use by the police during routine patrols.

Subsequently, the plaintiff filed an inverse condemnation claim alleging that the town's construction and use of the road and subsurface water line was an unconstitutional taking. After a bench trial, the trial court held that: (1) the town has the right to use the easement; (2) the town's construction of the access road was within the scope of the easement; (3) the town's use of the road did not overburden the easement; and (4) the town's installation of the subsurface water line was not within the scope of the easement and, thus, constituted a taking. The trial court awarded damages for the installation of the subsurface water line and attorney's fees. This appeal followed.

The plaintiff argues that the trial court erred in holding that the town did not commit an unconstitutional taking by inverse condemnation in violation of the State and Federal Constitutions. *See* N.H. CONST. pt. I, art. 12; U.S. CONST. amends. V, XIV. Specifically, the plaintiff argues that

the town committed an unconstitutional taking because the town did not have the right to use the easement. The plaintiff further·argues that, even if the town had the right to use the easement, the town's use exceeded the scope of the easement and, thus, the town committed an unconstitutional taking. We first address the plaintiff's arguments under our State Constitution, using federal law only as an aid in our analysis. *Webster v. Town of Candia*, 146 N.H. 430, 438 (2001).

■■ Inverse condemnation occurs when a governmental body takes property in fact but does not formally exercise the power of eminent domain. *Sundell v. Town of New London*, 119 N.H. 839, 845 (1979). When this occurs, the governmental body has committed an unconstitutional taking and the property owner has a cause of action for compensation. *See id.* A permanent physical invasion or occupation of land by a governmental actor gives rise to a claim of inverse condemnation. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982).

Here, although the town physically invaded the plaintiff's property to construct and use the access road and subsurface water line, this use does not give rise to a claim for inverse condemnation if the town has the right to use the easement over the plaintiff's property. Whether the town has the right to use the easement is a question of law that we review *de novo*. *See Thurston Enterprises, Inc. v. Baldi*, 128 N.H. 760, 765 (1986).

In deciding this issue, we must first consider the types of easements involved and the nature of the rights associated with the easements.

■ An appurtenant easement is a nonpossessory right to the use of another's land. *Burcky v. Knowles*, 120 N.H. 244, 247 (1980). It creates two distinct estates—the dominant estate, which is the land that benefits by the use of the easement, and the servient estate, which is the land burdened by the easement. *See id.* An appurtenant easement is incapable of existence separate and apart from the dominant estate. *Id.* The benefit of an appurtenant easement "can be used only in conjunction with ownership or occupancy of a particular parcel of land." RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 1.5 comment *a* at 31 (2000).

■ An easement in gross is also a nonpossessory right to the use of another's land, but it is a mere personal interest. *Burcky*, 120 N.H. at 247. "There is a servient estate, but no dominant estate," because the easement "benefits its holder whether or not the holder owns or possesses other land." J. BRUCE & J. ELY, JR., THE LAW OF EASEMENTS AND LICENSES IN LAND § 2:2, at 2-3 (2001); *see Burcky*, 120 N.H. at 247. An easement in gross "grants to the holder the right to enter and make use of the property

of another for a particular purpose." *Warburton v. Va. Beach Fed. Sav. & Loan*, 899 P.2d 779, 781 (Utah Ct. App. 1995); *see, e.g., Town of Kearny v. Municipal San. Landfill Auth.*, 363 A.2d 390, 396 (N.J. Super. Ct. Law Div. 1976) (finding that an agreement to deposit refuse on land was an easement in gross because it permitted a limited use or enjoyment of the burdened estate).

■ Here, VPI has an easement over the plaintiff's property "for ingress and egress by motor vehicle, foot and otherwise over a strip of land fifty (50) feet in width." The trial court found, and we agree, that this language created an appurtenant easement because "the language creates two distinct tenements in which a dominant estate is benefited by use of an easement on a servient estate ... [and] the language is clear and unambiguous." *Burcky*, 120 N.H. at 247.

■ With regard to the pumping station easement, VPI granted the town a perpetual pump station easement "for the purpose of the construction, operation and maintenance of a sewage pumping station by the Town of Rye." This language created an easement in gross because "[i]t belongs to [the town] independently of [its] ownership or possession of other land." *Id.*

In this case, the plaintiff relies upon the nonpossessory nature of the town's easement in gross over VPI's property to argue that the town could not obtain the right to use the appurtenant easement over the plaintiff's property because the town does not have a possessory right in the dominant estate. In other words, the plaintiff argues that because the purpose of an appurtenant easement is to "benefit[] the owner of the dominant estate ... *as the possessor* of such estate[,]" *Burcky*, 120 N.H. at 247, the appurtenant easement over the plaintiff's property cannot benefit the town's pumping station easement, which is a *nonpossessory* interest in land.

■ We agree that, because it is a nonpossessory interest, the pumping station easement cannot serve as the dominant estate to the appurtenant easement over the plaintiff's property. "It is well settled that a dominant tenement's interest in an easement cannot be severed from the land by transferring it to a third party." *Cricklewood on the Bellamy Condo. Assoc. v. Cricklewood on the Bellamy Trust*, 147 N.H. 733, 737 (2002). For example, VPI, as the current owner of the dominant estate, could not transfer its interest in the appurtenant easement over the plaintiff's property to the town without transferring title to, or rightful possession of, a portion of the dominant estate. *See id.* Accordingly, VPI could not convey

the easement over the plaintiff's property to the town because the town did not have a possessory interest in VPI's land. Thus, the town did not obtain the right to use the easement when VPI attempted to convey it to the town.

Nevertheless, the fact that the town, because of its status as an easement holder, could not obtain the right to use the appurtenant easement by VPI's conveyance does not end the inquiry. Instead, we must look to the nature of the rights associated with the town's easement arrangement with VPI and the effect of this arrangement on the appurtenant easement over the plaintiff's property. We must also consider the dominant estate holder's right to use an appurtenant easement.

An easement holder has "only a nonpossessory interest in land; that is, a limited right to use but not possess the conveyed land." *Thurston Enterprises, Inc.*, 128 N.H. at 764. While an easement is a property right, it differs from an estate in land in that the "easement holder may only use the land burdened by the easement; the holder may not occupy and possess it as does an estate owner." BRUCE, *supra* § 1:1, at 1-3. Moreover, the easement does not dispossess the landowner. *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1234 (Colo. 1998); *see also* BRUCE, *supra* § 1:1, at 1-4 (noting that "a possessor and an easement holder can simultaneously utilize the same parcel of land").

Here, the town merely has the right to use, not possess, VPI's property. *See Thurston Enterprises, Inc.*, 128 N.H. at 764. On the other hand, VPI retains its possessory interest in the land burdened by the pumping station easement. *See Lazy Dog Ranch*, 965 P.2d at 1234. As a result of VPI's continued possession of the land burdened by the town's pumping station easement, the easement relationship between VPI and the plaintiff remains unchanged. VPI remains the possessor of the dominant estate to which the easement over the plaintiff's property is appurtenant. Thus, VPI remains the holder of the dominant estate and the appurtenant easement.

We next look at the dominant estate holder's right to use an appurtenant easement. A dominant estate holder is entitled to the reasonable use of an appurtenant easement. *See White v. Hotel Co.*, 68 N.H. 38, 43 (1894) (stating that easement holders have whatever rights are reasonably necessary to enable them to enjoy the easement beneficially). In addition, the dominant estate holder "may license or authorize third persons to use its right of way" so long as the use is reasonable. *Henley v. Continental Cablevision*, 692 S.W.2d 825, 828 (Mo. Ct. App. 1985). Reasonable use may include use by tenants, guests and invitees of the

dominant estate holder. *Gowen v. Cole*, 875 S.W.2d 637, 641 (Mo. Ct. App. 1994); BRUCE, *supra* § 8:4, at 8-15; *see also* 28A C.J.S. *Easements* § 164 (1996) (stating that an appurtenant easement may be used "by all persons lawfully going to or from [the dominant estate]").

■ Here, VPI, as the dominant estate holder, may authorize others, such as the town, to use the appurtenant easement over the plaintiff's property. Thus, the town has the right to use the easement over the plaintiff's property because VPI has permitted it to do so.

Having found that the town has the right to use the easement, we turn to the plaintiff's argument that the town exceeded the scope of the easement and, thus, committed an unconstitutional taking. Specifically, the plaintiff argues that the trial court erred in finding that: (1) the language of the easement deed permitted the construction of the access road; and (2) the town's construction and use of the road conformed to the rule of reason.

The pertinent language in the deed provides:

> I, [the Grantor] for consideration paid, grant to [VPI] . . . an easement and right-of-way, for the benefit of any and all property presently or hereinafter owned, occupied or used by Grantee herein, its successors and assigns, to pass and repass and for ingress and egress by motor vehicle, foot and otherwise, in common with others, over a strip of land fifty (50) feet in width, more or less . . . .

Our task is to determine the parties' intent in light of the surrounding circumstances at the time the easement was granted. *Lussier v. N.E. Power Co.*, 133 N.H. 753, 756 (1990). We base our judgment on this question of law upon the trial court's findings of fact. *Dumont v. Town of Wolfeboro*, 137 N.H. 1, 5 (1993). Clear and unambiguous terms of a deed control how we construe the parties' intent, but the law may imply supplemental rights. *Id.*

Under an express grant, a grantee takes by implication whatever rights are reasonably necessary to enable it to enjoy the easement beneficially. *White*, 68 N.H. at 43. This includes the right to make improvements that are reasonably necessary to enjoy the easement. BRUCE, *supra* § 8:36, at 8-84; *see, e.g.*, *White*, 68 N.H. at 42 (holding that a "grantee of a defined way has the right to do whatever is necessary to make it passable or usable for the purposes named in the grant"); *Page v. Bloom*, 584 N.E.2d 813, 816 (Ill. App. Ct. 1991) (stating that easement holder is entitled to grade and improve right-of-way).

■ In this case, the language of the express grant of the easement clearly encompassed the right to ingress and egress by motor vehicle, foot or otherwise. Moreover, this right includes the additional right to improve the easement. Accordingly, the language of the easement deed permits the construction of the access road.

We next consider whether the town's construction and use of the road conformed to the rule of reason. *See Sakansky v. Wein*, 86 N.H. 337, 339 (1933). Under this rule, the parties involved must act reasonably under the terms of the easement to prevent interference with the use and enjoyment of each other's property. *Lussier*, 133 N.H. at 758. Reasonableness is a question of fact that is determined by considering the surrounding circumstances, such as location and the use of the parties' properties, and the advantages and disadvantages to each party. *Heartz v. City of Concord*, 148 N.H. 325, 332 (2002). We will not overturn the factual findings of the trial court, particularly when aided by a view of the property in question, when they are supported by the evidence. *Flanagan v. Prudhomme*, 138 N.H. 561, 574 (1994).

■ Based upon the evidence presented at trial and a view of the properties, the trial court concluded that the construction of the access road within the geographical bounds of the easement and the limited use of the road by the town was reasonable. In determining that the town's limited use of the road was reasonable, the trial court noted that "[t]heoretically, if [VPI] had constructed and used the roadway for the Farragut Hotel, there likely would have been as much or more motor vehicle use than that which now occurs." Because the evidence supports the trial court's findings, we conclude that the trial court did not err in finding that the town's construction and use of the access road was reasonable.

■ In reaching this conclusion, we reject the plaintiff's argument that, because the easement previously contained trees and wetlands, the town's construction of the access road was unreasonable. What is or is not a reasonable use of an easement does not become crystallized at any particular moment of time. *Downing House Realty v. Hampe*, 127 N.H. 92, 96 (1985). If the use of the easement is a normal development from conditions existing at the time of the grant, the use is not considered to be unreasonably burdensome. *Heartz*, 148 N.H. at 332.

■ Here, the fact that the easement once contained trees and wetlands does not make the town's construction of the access road unreasonable. Rather, where the original grantor of the easement testified that she

understood that VPI could use the easement "to construct a road or drive necessary for proper ingress to and egress from its property," the construction of the access road was a normal development of the easement and, thus, reasonable.

We also reject the plaintiff's argument that the town's use of the road was prohibited under *Sandown v. Kelley*, 97 N.H. 418, 419-20 (1952), because it converted a private right-of-way to public use. *Sandown* does not stand for such a broad proposition. Rather, in *Sandown*, we upheld the use of a private right-of-way to access a town dump, so long as the use was reasonable. *Id.* Here, because the use of the access road was reasonable, the fact that the town was using a private easement is of no consequence.

Accordingly, the trial court did not err in finding that the town had the right to use the easement and that the town's use was reasonable. The Federal Constitution offers the plaintiff no greater protection than does the State Constitution under these circumstances. *See Loretto*, 458 U.S. at 435; *Webster*, 146 N.H. at 438. Therefore, we reach the same result under the Federal Constitution as we do under the State Constitution.

The town cross-appeals the court's ruling that the installation and use of a subsurface water line was beyond the scope of the easement. As we stated above, our task is to determine the parties' intent in light of the surrounding circumstances at the time the easements were granted. *Lussier*, 133 N.H. at 756. Clear and unambiguous terms of a deed control how we construe the parties' intent, but the law may imply supplemental rights. *Dumont*, 137 N.H. at 5.

Here, the language of the easement deed provided for ingress and egress by motor vehicle, foot or otherwise. The circumstances surrounding the grant of the easement to VPI reveal, however, that the easement was intended to provide secondary access to the Farragut Hotel. Because the parties to the original conveyance intended the easement to provide secondary access, as opposed to sole access or primary access, they did not intend the easement to be used for utilities to service VPI's property. *Compare Guild v. Hinman*, 695 A.2d 1190, 1193 (Me. 1997) (holding that the installation of utility lines was not within the scope of a roadway easement because the parties did not contemplate the dominant estate to be used for residential purposes and, thus, did not contemplate that the easement would be used for services necessary to support a residence), *with Bivens v. Mobley*, 724 So. 2d 458, 464-65 (Miss. Ct. App. 1998) (holding that the installation of a water line was within the scope of a roadway easement because an easement "for ingress and egress to a tract on which a home is to be built means more than a surface roadway"—it

also includes ingress and egress for other necessities). Accordingly, the trial court did not err in finding that the language of the easement deed does not permit the installation and use of the underground water line.

Finally, the town challenges the trial court's award of attorney's fees. Specifically, the town argues that the trial court erred in relying on *Burrows v. City of Keene*, 121 N.H. 590, 601 (1981), to award attorney's fees. We reverse the trial court's award of attorney's fees.

We review the trial court's award of attorney's fees under an unsustainable exercise of discretion standard, giving deference to the trial court's decision. *See Glick v. Naess*, 143 N.H. 172, 175 (1998); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). To be reversible on appeal, "the discretion must have been exercised for reasons clearly untenable or to an extent clearly unreasonable to the prejudice of the objecting party. If there is some support in the record for the trial court's determination, we will uphold it." *Glick*, 143 N.H. at 175 (quotation omitted).

"An award of attorney's fees ... must be grounded upon statutory authorization, an agreement between the parties, or an established exception to the rule that each party is responsible for paying his or her own counsel fees." *Clipper Affiliates v. Checovich*, 138 N.H. 271, 278 (1994) (quotation and brackets omitted). In *Burrows*, we awarded attorney's fees and costs for the appeal "[b]ecause a citizen should not be compelled to bear the financial burden of protecting himself from unconstitutional abuses of power." *Burrows*, 121 N.H. at 601. We also remanded the case for an assessment of attorney's fees and costs at the trial level. *Id.* Our holding in *Burrows*, however, did not establish a *per se* rule that entitles all successful plaintiffs in inverse condemnation cases to recover attorney's fees and costs. Rather, we relied upon RSA 490:14-a (Supp. 1979) and Supreme Court Rule 23, which provide for attorney's fees and costs when an appeal is frivolous, immaterial, intended for delay or in bad faith. *See id.* Furthermore, in remanding for attorney's fees and costs at the trial level, we relied upon *Harkeem v. Adams*, 117 N.H. 687, 691 (1977), which provides for attorney's fees when an individual is forced to seek judicial assistance to secure a clearly defined and established right and the opposing party has acted in bad faith. *See Burrows*, 121 N.H. at 601.

Here, the trial court made no finding that the town acted in bad faith. Moreover, States are split on whether underground utilities are within the scope of a roadway easement. *See* BRUCE, *supra* § 8:4, at 8-16 to 8-17. Thus, the plaintiff was not seeking judicial assistance to secure a

clearly defined and established right. *See Harkeem*, 117 N.H. at 691. Accordingly, we reverse the trial court's award of attorney's fees.

*Affirmed in part; reversed in part.*

BRODERICK, C.J., and NADEAU and DALIANIS, JJ., concurred.