Merrimack
No. 2003-008

MOTION MOTORS, INC.

v.

KENNETH G. BERWICK & a.

Argued: February 4, 2004
Opinion Issued: April 20, 2004

*Lester Wm. Firstenberger, PLLC,* of Pittsfield, and *Allyn C. Bridge,* of Concord (*Lester Wm. Firstenberger* and *Mr. Bridge* on the brief, and *Mr. Firstenberger* orally), for the plaintiff.

*Sheehan Phinney Bass + Green,* of Manchester (*Robert R. Lucic* and *John-Mark Turner* on the brief, and *Mr. Lucic* orally), for the defendants.

DALIANIS, J. The defendants, Kenneth G. and Doris D. Berwick, appeal orders of the Superior Court (*Fitzgerald,* J.) that: (1) the Berwicks could not maintain a claim for enhanced damages under RSA 227-J:8 (2000); (2) the Berwicks' gravel rights did not extend to the entire eastern half of the property owned by the plaintiff, Motion Motors, Inc. (Motion Motors); and (3) the Berwicks must remove the sawmill upon Motion Motors' demand. While the trial court addressed some issues as if both Berwicks had the rights in question, we note that the reservations of rights in the gravel, timber and sawmill were reserved to Kenneth Berwick personally. Motion Motors cross-appeals, arguing that the trial court erred by: (1) granting the Berwicks' petition to quiet title; (2) not admitting the testimony of certain witnesses; (3) dismissing Motion Motors' claim for damages; (4) ruling that Motion Motors had unlawfully terminated the Berwicks' mineral rights and extending those rights an additional three years; (5) denying Motion Motors' request for discovery of the drafting attorney's personal notes; and (6) granting the Berwicks' motion for a directed verdict. We affirm in part and reverse in part.

The record establishes the following facts. On March 24, 1988, Motion Motors purchased real property from the Berwicks, which Motion Motors had been renting from the Berwicks. At that time, the Berwicks' son, Michael Berwick, and Ralph Langevin each owned fifty percent of Motion Motors. The property is a square plot of land in Loudon, connected to Ricker Road by a twelve-foot wide "panhandle" that runs approximately 200 feet adjacent to the Berwicks' property. The Berwicks' property borders Ricker Road and, except for the "panhandle," separates Motion Motors' property from the road. The property conveyed consists of approximately 10.4 acres. Additionally, there is a sawmill on the conveyed property, which was used by Kenneth Berwick before and after the sale.

Motion Motors purchased the property by a quitclaim deed, which contained a metes and bounds description of the property, set out certain

covenants and reservations, including a reservation for future use of the sawmill, and incorporated by reference an agreement (referenced agreement). The referenced agreement was revised on March 24, 1993 (revised agreement). Both parties argue that there are conflicts among the grants, covenants, and reservations in each document, as well as ambiguities within each document. Motion Motors has sought to sell its interest in the parcel. To date, any proposed sales have been contingent upon Motion Motors securing a release of Kenneth Berwick's reservation of the use of the sawmill.

We begin with the Berwicks' issues on appeal. They first appeal the denial of their counter-claim seeking enhanced damages for the unauthorized felling of timber.

When the Berwicks sold the property to Motion Motors, they reserved "under Kenneth G. Berwick, personally, . . . the rights to harvest and remove all standing timber" on the property for fifteen years. The Berwicks allege that Motion Motors unlawfully invaded that right by cutting down trees on the property.

In matters of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Estate of Ireland v. Worcester Ins. Co.*, 149 N.H. 656, 661 (2003). We look first to the statutory language itself, and, where possible, we ascribe the plain and ordinary meanings to words used. *Id.* If the language is plain and unambiguous, we need not look beyond the statute for further indications of legislative intent. *Id.* The trial court's interpretation of a statute is a question of law, which we review *de novo*. *Pennelli v. Town of Pelham*, 148 N.H. 365, 366 (2002).

RSA 227-J:8 states, in pertinent part:

> I. No person shall negligently cut, fell, destroy, injure, or carry away any tree, timber, log, wood, pole, underwood, or bark which is on the land of another person . . . without the permission of that person . . . .

> II. [A]ny person who violates the provisions in paragraph I shall forfeit to the person injured no less than 3 and not more than 10 times the market value of every such tree, timber, log, lumber, wood, pole, underwood, or bark cut, felled, destroyed, injured, or carried away.

The Berwicks rely upon *Smith v. Kennett*, in which we recognized that the statute provides damages for the "benefit of the person injured, that is, for the benefit of the owner of the trees, not the owner of the land," *Smith*

*v. Kennett*, 80 N.H. 14, 14 (1921), and argue that, as the owner of the trees, they are entitled to enhanced damages.

· The penalty provided in RSA 227-J:8 is intended to protect trees as a marketable resource. *See Peaslee v. Koenig*, 122 N.H. 828, 831 (1982). The statute has two criteria to qualify for damages. First, the timber in question must have been situated on "the land of another person." RSA 227-J:8, I. Second, the person bringing the action must have been "the person injured." RSA 227-J:8, II.

In *Smith*, the plaintiff owned property and the defendant owned certain timber on that property, which he had purchased from the plaintiff. After the time period had expired for the defendant to cut down his purchased timber, he entered the plaintiff's land and over the plaintiff's objection cut down the timber. The plaintiff brought an action against the defendant claiming enhanced damages under a statute virtually identical to RSA 227-J:8. *See* PS 244:1 (1891); *Smith*, 80 N.H. at 14. We ruled that, although the defendant had committed an unlawful entry onto the plaintiff's land, the plaintiff was not entitled to damages under the statute because the plaintiff was not injured. *See Smith*, 80 N.H. at 14. Therefore, although the plaintiff met the first criterion, since the defendant cut down timber situated on the land of another person, the plaintiff failed to meet the second criterion because the plaintiff was not injured by the defendant's actions since the defendant owned the timber.

In the present case the roles of the plaintiff and the defendant are reversed. Kenneth Berwick, as owner of the rights in timber, qualifies as a person injured by the felling of the timber. Thus, the question is whether Motion Motors felled timber "on the land of another person." The Berwicks argue that timber rights should qualify as an interest in land sufficient to satisfy this requirement. They further argue that RSA 227-J:8 is a trespass statute and that chopping down the trees of another is considered trespass to land in other contexts.

■ In *Lake v. Sullivan*, 145 N.H. 713, 717 (2001), interpreting an almost identical predecessor statute, *see* RSA 539:1 (Supp. 1994) (repealed 1995), we held that a tenancy did not qualify as "land of another" for the purposes of section I of the statute. Similarly, timber rights do not qualify as "land of another" for the purposes of RSA 227-J:8, I. The statute applies to timber felled *on the land of* another person. The legislature could have, but did not, provide that it apply when a party fells timber *belonging to* another person. *See* RSA 227-J:12, I (2000) ("No person shall knowingly cut out or alter the mark of any mill log or cut into any lumber or log *belonging to another person* . . . ." (emphasis added)); *see also Clifton Iron*

*Co. v. Curry*, 18 So. 554, 556 (Ala. 1895). Therefore, the Berwicks fail to meet the first criterion because Motion Motors owned the underlying land and, thus, did not injure timber situated "on the land of another person."

The Berwicks next challenge the trial court's ruling that, under the quitclaim deed and referenced agreement, they could remove gravel only from a particular bluff of sand behind the sawmill rather than from the entire eastern half of the parcel.

The proper interpretation of a contract, such as a deed, is a question of law for this court. *Baker v. McCarthy*, 122 N.H. 171, 174-75 (1982). When the language of the deed is clear and unambiguous, we will interpret the intended meaning from the deed itself without resort to extrinsic evidence. *Petition of Rattee*, 145 N.H. 341, 345 (2000). We review the trial court's interpretation of the contract *de novo*. *Lawyers Title Ins. Co. v. Groff*, 148 N.H. 333, 336 (2002).

The language of the quitclaim deed states:

> Further reserving unto the grantor Kenneth G. Berwick, personally, the rights to dig and remove the gravel deposits located on the easterly side of the *within premises*, and the rights to harvest and remove all standing timber on the *said premises*, which rights to said gravel and timber shall automatically expire fifteen (15) years from date hereof.
>
> The above described and conveyed *premises* are conveyed subject to those certain covenants and restrictions on resale, further encumbrance and use of the said *premises* as are contained in the [referenced] agreement between the *within* grantors and the grantee herein . . . .

(Emphasis added.)

Motion Motors argues that the phrase "within premises" is ambiguous and should be interpreted in accordance with extrinsic evidence that it argues shows that the Berwicks intended to reserve rights only to the gravel behind the sawmill. The Berwicks argue that the language is unambiguous and that any extrinsic evidence shows that they are entitled to deposits throughout the eastern half of the entire property.

We hold that the meaning of "within premises" is unambiguous and we need not look to extrinsic evidence. The word "premises" appears four times in the deed. The third and fourth uses, in the sentence quoted above, clearly refer to the entire conveyed property because the "premises" conveyed to Motion Motors was the entire 10.4-acre parcel, and not the

sawmill and bluff of sand behind the sawmill, in which a right of use was reserved to Kenneth Berwick.

Similarly, the word "premises" as used in the sentence quoted above concerning the reservation of gravel and timber rights, also refers to the entire parcel. First, the deed employs the term "premises" to refer to the entire parcel in the subsequent sentence. Second, the only other uses of the word "within" describe the "within grantors," in which the term "within" is simply used to describe the parties who are the subject of the deed. Likewise, the term "within premises" simply refers to the premises that is the subject of the deed, and not, as Motion Motors suggests, premises located "within" the parcel of land.

 Throughout the deed the drafter refers to the underlying real estate as a "parcel," "property," or "premises," and it is clear that each of the three terms refers to the entire deeded property. Thus, considering the deed as a whole, the only reasonable interpretation of the clause reserving to Kenneth Berwick "the rights to dig and remove the gravel located on the easterly side of the within premises" is that it refers to the eastern half of the entire parcel. This interpretation is further supported by the language in the referenced agreement which notes that Kenneth Berwick had retained and reserved all "the rights to the gravel located on the east side of the . . . property."

The Berwicks' final issue on appeal concerns the trial court's order that they remove a sawmill located on Motion Motors' property upon Motion Motors' sale of the property.

The deed between the parties contains a clause reserving "unto the grantor, Kenneth G. Berwick, his heirs, administrators, successors and assigns the sawmill structure and related improvements appurtenant thereto now located on the said property."

The referenced agreement contains three clauses relating to the sawmill. Clause three states that "a condition of the . . . conveyance and transfer is that Kenneth G. Berwick retains all right, title and ownership to the saw mill." Clause four states that "Motion Motors, Inc., for itself, its successors and assigns, agree [sic] that Kenneth G. Berwick can maintain the said sawmill on the property . . . and cause the same to be operated for an indefinite period of time." Clause six states that Motion Motors "agrees that during the first five years following the date of the aforesaid conveyance and transfer, it will neither sell nor transfer the property," and "[in] the event a sale is proposed on terms and conditions acceptable to Motion Motors, Inc. and with the written prior agreement of [the Berwicks], the property may be conveyed subject to the right of [the

Berwicks] to remove the sawmill and equipment belonging to them as may be located on the said property, for which purpose there shall be afforded a reasonable time within which to accomplish the removal [of the sawmill]."

The 1993 revised agreement also refers to the sawmill, but simply extends the original five-year period for an additional five years.

Motion Motors argues that the reservation of the use of the sawmill for an indefinite period of time is ambiguous and that we should turn to extrinsic evidence to determine the length of the contract. It further argues that a proper reading of clause six of the referenced agreement and revised agreement mandates that the Berwicks remove, within a reasonable period of time, the sawmill structure upon any proposed sale accepted by Motion Motors.

We conclude that the contract is not ambiguous and may be interpreted on its face. When the provisions of an integrated agreement, viewed in the context of the entire agreement, are not ambiguous, we interpret the contract as a matter of law. *West v. Turchioe*, 144 N.H. 509, 515 (1999).

The language of the quitclaim deed concerning the sawmill envisions a broad reservation, granting rights to "Kenneth Berwick, his heirs, administrators and assigns." In contrast, the deed narrowly reserves to "Kenneth Berwick, personally, the rights to dig and remove the gravel deposits . . . and remove all standing timber . . . [which] shall automatically expire fifteen years" from the date of the deed.

We also look to the language of the referenced and revised agreements. In interpreting a multiple-document agreement, we seek to harmonize and give effect to the provisions of the various documents so that none will be rendered meaningless. *Id.*

In the referenced and revised agreements "Motion Motors, Inc. for itself, its successors and assigns" gives Kenneth Berwick the right to use the sawmill "for an indefinite period of time." The parties disagree as to the meaning of "indefinite." We will interpret a contract according to the common meaning of its words and phrases and judge the intent of the parties by objective criteria rather than their unmanifested states of mind. *Lake*, 145 N.H. at 715. The common meaning of "indefinite" is "continuing with no immediate end being fixed." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1147 (unabridged ed. 2002). Because Kenneth Berwick's right to indefinite use of the sawmill extends to Motion Motors' successors and assigns, it is clear that the parties agreed that Kenneth Berwick could continue to use the sawmill after a proposed sale. The clause providing for indefinite use is consistent with the broad language of the deed.

The trial court found that "prior to entering into a binding agreement for sale of the property, Motion Motors must first obtain the Berwick's [*sic*] approval. Notwithstanding this requirement, the Berwicks would have no basis to unreasonably withhold their approval, contingent on Motion Motors' payment of any monies it owed the Berwicks." Thus, the trial court ordered the Berwicks to remove the sawmill on the basis that Motion Motors claimed to be ready to make a sale in 2002 that was contingent upon the Berwicks removing the sawmill and that Motion Motors had sought, but had failed to obtain, the Berwicks' agreement. We disagree with the trial court's ruling.

As discussed above, the language of the deed and clauses three and four of the referenced and revised agreements gives Kenneth Berwick the right to use the sawmill for an indefinite period of time and contemplates that his right to continued use of the sawmill extends beyond the sale of the property. It was reasonable for the Berwicks to withhold their approval because the sale was contingent upon Kenneth Berwick giving up his right to continued use of the sawmill. Nothing in the contract indicates that Motion Motors could mandate that Kenneth Berwick surrender his rights to use the sawmill. The only language in the deed and agreements discussing removal of the sawmill refers to allowing the Berwicks a reasonable period of time to remove the sawmill after a sale *if* the Berwicks had already agreed to the sale by prior written agreement. Here the Berwicks had not signed a prior written agreement approving the sale and had a reasonable objection. Therefore, we hold that the trial court erred in ordering the Berwicks to remove the sawmill.

Motion Motors has received the benefit of its bargain and has cited no persuasive reason as to why it should not have to endure the consequences of the deal that it freely struck. Now that the second five-year period has expired Motion Motors is free to sell the land, subject to Kenneth Berwick's personal right to use the sawmill, unless the Berwicks agree by prior written approval to release that right. Meanwhile, as the right to indefinite use as described in the referenced and revised agreements is personal to Kenneth Berwick, he is free to continue to use the sawmill until the time of his death.

We now turn to Motion Motors' issues on cross-appeal. Motion Motors first argues that the trial court erred in granting the Berwicks' motion to quiet title as to a twelve-foot right-of-way claimed by Motion Motors in addition to the twelve-foot "panhandle" granted to Motion Motors in the quitclaim deed. The dispute concerns the language of the referenced agreement, which states in clause two that "[b]y deed of even date, the real

estate and property described therein located off Ricker Road ... consisting of 10.4 acres more or less, together with a 12 foot right-of-way for access from Ricker Road, has been conveyed by Kenneth G. and Doris D. Berwick to Motion Motors, Inc."

In granting the Berwicks' petition to quiet title, the trial court ruled that when "considered in light of the fact that there is a reference to the deed conveying the property and the fact that the language 'has been conveyed', past tense, is used, it is clear to the court that this was not an agreement for a right of way above and beyond the access described in the deed." The trial court noted that "while it is unfortunate that the drafter of this agreement used the term right of way which usually connotes an interest in the land of another, in this case, it is patently clear that the reference is to the access driveway already conveyed in fee simple to Motion Motors and not some additional 'right of way.'"

Motion Motors argues that the language "together with a 12 foot right-of-way" indicates that the referenced agreement meant to convey a new interest in land in the form of an easement over the Berwicks' property. We disagree.

It is clear from the plain language of the referenced agreement that the Berwicks were not attempting to convey a new interest in land. The clause describing the right-of-way begins by stating, "By deed of even date," which indicates that what will next be described is simply what the deed has already stated. This is reconfirmed by the language "has been conveyed," which is in the past tense, indicating that a new conveyance is not now taking place. The reference to the deed, combined with the language in the past tense, indicates that clause two does not contemplate granting to Motion Motors a new interest in land not already conveyed by the deed.

Motion Motors' next issue involves the proposed testimony of Michael Berwick and expert witness Attorney Robert Howard. Motion Motors argues that because the language concerning the "12 foot right-of-way" and the removal of the sawmill was ambiguous, the court erred in excluding Michael Berwick's testimony as to his subjective intent at the time the deed was executed and Attorney Howard's interpretation of the deed concerning those topics. Because we have found that the language at issue is unambiguous, however, we need not address these issues.

Motion Motors' next issue concerns its claim for monetary damages from the failure of its 1999 proposed sale of the property to Gary Colby. Motion Motors contends that it is entitled to monetary damages because, upon its acceptance of Colby's offer to purchase the land, it demanded that

the Berwicks remove the sawmill and the Berwicks failed to do so. Based upon our conclusion that Motion Motors had no right to demand that the Berwicks remove the sawmill, and that Motion Motors neither sought nor received the Berwicks' prior written approval as to the removal of the sawmill, we need not address this issue.

■ The final issue that we will address concerns the court's order granting a three-year extension of Kenneth Berwick's mineral rights due to Motion Motors' interference with those rights. On July 26, 1999, former counsel for Motion Motors wrote to counsel for the Berwicks declaring that under no condition was there any permission or authority to mine any mineral on Motion Motors' property. The letter further pointed out that the parties were in litigation regarding the nature and extent of mineral rights. In its order, dated December 2, 2002, the trial court found that "this denial of permission to exercise clearly defined rights to that area where the court has determined such right to exist … constituted an unjust and illegal termination of [the] Berwicks' rights under the agreement."

Motion Motors argues that the letter did not constitute a termination of Kenneth Berwick's gravel rights because Motion Motors sought only to inform the Berwicks of Motion Motors' position regarding the legal status of the excavation rights. We disagree.

Although Motion Motors made reference to the pending litigation, the attempted termination was not conditioned in any way upon the litigation nor did it act to merely inform the Berwicks of the status of the litigation. The Berwicks negotiated for Kenneth Berwick's right to mine the minerals for fifteen years—from March 1988 to March 2003—and Motion Motors' unconditional notice, on July 26, 1999, clearly and unequivocally attempted to terminate those rights. *See also Dover v. Firefighters Local 1312*, 114 N.H. 481, 484 (1974).

■ Motion Motors next argues that the trial court's grant of the equitable remedy of a three-year extension of the mineral rights was improper because the "plain, adequate and complete" remedy of legal damages was available. However, the trial court gave Motion Motors the option of choosing between legal damages or an equitable remedy. The trial court ruled:

> Because the relations between these parties have disintegrated to the level that it is going to be difficult, if not impossible, for them to work together, the court is reluctant to order a continuing relationship between them. The court, therefore,

orders that at the discretion of Motion Motors, Motion Motors shall either reimburse the Berwicks for the value of the gravel to which they were entitled and were unable to remove or the mineral rights shall be extended for a period of three years.

Therefore, the trial court did not impose an equitable remedy upon Motion Motors; rather, the court provided it with an option to choose between an equitable remedy or a legal remedy.

Motion Motors' final argument centers around a cease and desist order sent, at Motion Motors' behest, from the Town of Loudon to the Berwicks on September 9, 2002. The cease and desist order stated that the Berwicks could not mine "until such applicable local permits and approvals are granted." Motion Motors contends that because the Berwicks had not obtained the proper permits by September 9, 2002, or any time prior thereto, the Berwicks were not harmed by the July 26, 1999, notice of termination since they could not have exercised those rights. We disagree.

The notice of termination attempted to preclude Kenneth Berwick from acting on his mineral rights regardless of the alleged failure to obtain the "applicable local permits and approvals." The record does not reflect that he was prohibited from obtaining the proper permits; rather, it reflects that he had simply not yet chosen to take that step. The trial court was aware of the town's cease and desist order and properly granted a remedy as to Motion Motors' unlawful purported notice of termination.

We need not address Motion Motors' remaining arguments because they were either not properly raised below and preserved for appeal, or they lack merit and warrant no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed in part; reversed in part.*

NADEAU and DUGGAN, JJ., concurred.