937 A.2d 276 (2007)
Philip J. TANGUAY and another,
v.
Burton H. BIATHROW and another.
No. 2006-587.
Supreme Court of New Hampshire.
Argued: May 10, 2007.
Opinion Issued: October 17, 2007.
As Modified on Denial of Reconsideration December 4, 2007.
*277 Decato Law Office, of Lebanon (John B. Loftus, III on the brief and orally), for the petitioners.
Janson & Koppenheffer, LLP, of Lebanon (William K. Koppenheffer on the brief and orally), for the respondents.
HICKS, J.
The respondents, Burton and Barbara Biathrow, appeal an order of the Superior Court (Burling, J.) granting the petition of the petitioners, Philip, Nancy and Barbara Tanguay, to quiet title to their property, against which the respondents assert an appurtenant easement. We affirm.
The record supports the following facts relevant to this appeal. The petitioners and the respondents own parcels of land in Lebanon located along the abandoned Northern Railroad corridor. The respondents' parcel lies north of the corridor and the petitioners' parcel lies to the south.
In the 1800s, Benjamin Colburn owned all this land. In 1846, Colburn conveyed his land lying south of the corridor to the Railroad by quitclaim deed as follows:
Meaning to convey all the land I own[ ] between said Rail Road and the Pond being about three acres . . . more or less. Said land is bought by said Rail Road Company Expressly for the Benefit of grading and repairing said road and the said Rail Road Company have the right to take and use all or any part of said land for the above purpose and it is further agreed by the said Northern Rail Road Company that the said Colb[u]rn has the right and privilege to use said land for his own use and benefit not interfering with the above[-]granted privilege in any way, and the said Colb[u]rn is to furnish a passway at his own Expense to said land not obstructing in any way said Rail Road.
At the time of the transfer, Colburn retained his land to the north of the corridor, which the respondents assert was the dominant estate Colburn sought to benefit by reservation of the above easement.
The respondents argue that, as Colburn's successors in title to the land to the north, they are entitled to the use and enjoyment of the land conveyed to the Railroad in 1846, which now encompasses a portion of the petitioners' land. The petitioners argue, inter alia, that the 1846 deed created an easement in gross, personal to Colburn, which terminated upon his death. The trial court agreed with the petitioners.
The interpretation of a deed is a question of law. Motion Motors v. Berwick, 150 N.H. 771, 775, 846 A.2d 1156 (2004). When the language of the deed is clear and unambiguous, a court must interpret the intended meaning from the deed itself without resort to extrinsic evidence. Id. We review the trial court's interpretation of the deed de novo. Id.
Citing Burcky v. Knowles, 120 N.H. 244, 413 A.2d 585 (1980), the trial court ruled that
the use of the language "his own use and benefit" without reference to any other tract of land refers to a mere personal *278 interest. . . . Even though a lack of a dominant estate is not determinative that a reservation in a deed creates an easement in gross, applying the reasoning in Burcky, this Court finds that, in this case, the combined effect of no dominant estate and the language chosen by . . . Colburn referring to himself ["his own"], leads this Court to the conclusion that the parties intended the reservation to be an easement in gross[.]
We hold that the language of the deed is unambiguous and that the trial court correctly ruled that Colburn reserved an easement in gross. We base this holding in large measure upon the nature of easements and the nature of the rights associated therewith. See Arcidi v. Town of Rye, 150 N.H. 694, 698, 846 A.2d 535 (2004).
An appurtenant easement is a nonpossessory right to the use of another's land. It creates two distinct estates  the dominant estate, which is the land that benefits by the use of the easement, and the servient estate, which is the land burdened by the easement. An appurtenant easement is incapable of existence separate and apart from the dominant estate. The benefit of an appurtenant easement can be used only in conjunction with ownership or occupancy of a particular parcel of land.
An easement in gross is also a nonpossessory right to the use of another's land, but it is a mere personal interest. There is a servient estate, but no dominant estate, because the easement benefits its holder whether or not the holder owns or possesses other land. An easement in gross grants to the holder the right to enter and make use of the property of another for a particular purpose.
Id. at 698-99, 846 A.2d 535 (quotations and citations omitted).
Here, the deed provided that Colburn had the right and privilege to use said land for his own use and benefit. While we recognize that appurtenant easements are generally favored over easements in gross, Burcky, 120 N.H. at 248, 413 A.2d 585, here, the inclusion of his name, combined with the words "his own use" demonstrates Colburn's intent to retain a personal, nontransferable interest in the land. Colburn expressed no intention that the easement right be reserved "for the benefit of the property retained." 28A C.J.S. Easements § 12(a) at 186 (1996). To the contrary, the deed reserves the right for Colburn's "own use." See id. ("[I]f it appears from . . . construction [of the deed] that the parties intended to create a right to be attached to the person . . . by whom it was reserved, it will be deemed to be an easement in gross.").
The respondents argue that an appurtenant easement was created based upon: (1) the presence of a dominant estate to the north; (2) "the limitations placed upon the railroad's use of the land, and the rights Colburn retained to use the land"; and (3) the respondents' chain of title, which shows that their predecessors have "claimed and used the disputed parcel" throughout the years. They further argue that the trial court erred in drawing an inference from the lack of words of inheritance.
The respondents argue that a dominant estate is imposed by the following language: "said Colb[u]rn is to furnish a passway at his own Expense to said land not obstructing in any way said Rail Road." This language, however, makes no mention of a dominant estate; it merely expresses the parties' intention that Colburn was to "furnish" his own access to the land and that the Railroad had no obligation to provide access.
*279 The respondents then argue that even if this language is not interpreted to impose a dominant estate, the "lack of a dominant estate does not necessar[ily] result in an easement in gross." While this may be an accurate statement of the law, it does not affect our holding here, which is based upon the unambiguous language of the deed reserving an easement to Colburn for "his own use."
The respondents also urge that an appurtenant easement is created by language in the deed which limited the Railroad's use of the land to "grading and repairing" the railroad bed but gave Colburn the broad right to use the land in a manner "not interfering" with the Railroad's use. However, any restrictions that Colburn, as the grantor, placed upon the Railroad's use of the land in the transfer of the property are irrelevant to the type of easement reserved by Colburn. Similarly, the scope of the use retained by Colburn also has no bearing on this issue.
The respondents' remaining arguments regarding this issue are without merit and do not warrant further discussion. Vogel v. Vogel, 137 N.H. 321, 322, 627 A.2d 595 (1993).
Affirmed.
BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.