**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2014-0426, <u>Martin Hall & a. v. Ruth A. Rozelle & a.</u>, the court on February 12, 2015, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The plaintiffs, Martin Hall and Fiduciary Trust Company, as trustees of the F.S. Browning, Jr. GST Non-Ex Trust, dated 11/4/92, amended and restated 5/6/04, appeal an order of the Superior Court (<u>Houran</u>, J.) in favor of the defendants, Ruth Rozelle and several of her descendants and their spouses. The plaintiffs acquired their interest in the real estate at issue through Franklin and Cynthia Browning (the Brownings), who purchased it from Frederick and Ruth Rozelle (the Rozelles). The deed from the Rozelles to the Brownings was subject to a lease allowing the Rozelles "and their issue and spouses of their issue" to use a shed on the property and "to access over the existing camp roads and paths, to launch and dock small boats, swim, and park cars." The lease is automatically renewed "for successive periods of 6 years" unless the defendants cancel it in writing. The plaintiffs contend that the trial court erred by finding that: (1) the word "issue," as used in the lease, "has the well-understood plain meaning as lineal descendants"; and (2) the lease does not impose "a sufficient restraint as to justify overriding the intent of the contracting parties."

We review the trial court's interpretation of a lease agreement <u>de</u> <u>novo</u>. <u>Pope v. Lee</u>, 152 N.H. 296, 301 (2005). We will give the language used by the parties its common meaning as understood by reasonable people and, in the absence of ambiguity, we will determine the parties' intent from the plain meaning of the language used. <u>Id</u>. The plaintiffs state that the "lease is ambiguous as to the identity of the lessees beyond the named parties and as to its duration." However, they do not develop this argument and, thus, have waived it. <u>See</u> <u>State v. Blackmer</u>, 149 N.H. 47, 49 (2003) (stating that we confine our review to only those issues that have been fully briefed). They focus, instead, upon the argument that, if the lease is interpreted as benefiting the Rozelles' lineal descendants, as opposed to the Rozelles' issue living at the time they executed the lease, then it is an unenforceable restraint on alienation, which could not have been the intent of the parties to the lease.

A property owner may restrict the use of the property in any way the owner sees fit, within the confines of the law. <u>Pope</u>, 152 N.H. at 303. We will enforce the parties' intent to create a perpetual leasehold where the intended restraint is

reasonable in view of the justifiable interests of the parties. <u>Winecellar Farm v. Hibbard</u>, 162 N.H. 256, 266 (2011). Unreasonable restraints will be held invalid. <u>Id</u>. Assessing the reasonableness of a challenged restraint involves balancing the policy of respecting the intent of contracting parties with the policy of preserving the free alienability of real property. <u>Id</u>. at 267. A direct relationship exists between the justification for enforcement of a particular restraint, on the one hand, and the quantum of restraint, the actual practical effect upon alienation which would result from enforcement, on the other. <u>Id</u>. Thus, the greater the quantum of restraint that results from enforcement of a given clause, the greater must be the justification for that enforcement. <u>Id</u>.

In this case, the trial court found that the lease was part of the consideration for the sale of the property from the Rozelles to the Brownings, which justifies its enforcement. The Rozelles would be deprived of the benefit of their bargain were the lease found unenforceable as written. <u>See</u> <u>Motion Motors v. Berwick</u>, 150 N.H. 771, 778 (2004) (holding plaintiff bound by contract when it had received the benefit of its bargain and failed to cite persuasive reason why it should not have to endure consequences of deal it freely struck).

On the other hand, the plaintiffs have not demonstrated that the quantum of restraint is large. The plaintiffs do not argue that the defendants' use of the shed and waterfront precludes, or even interferes with, their use of the property. <u>Cf</u>. <u>Winecellar</u>, 162 N.H. at 268 (perpetual lease hindered farming). In fact, the trial court found, and the plaintiffs do not challenge, that there have been no complaints that the defendants over-use the property. Furthermore, the plaintiffs do not argue that the lease affects the property's marketability. <u>Compare</u> <u>Winecellar</u>, 162 N.H at 268 (stating restriction placed significant hindrance alienability of property) <u>with</u> <u>Pope</u>, 152 N.H. at 307 (stating restriction did not foreclose sale of premises). The lease requires the defendants to pay five percent of the property's annual real estate taxes. Thus, the plaintiffs are remunerated for the defendants' use, and that remuneration increases as the property becomes more valuable. <u>Compare</u> <u>Winecellar</u>, 162 N.H at 267 (noting lessee paid no rent) <u>with</u> <u>Pope</u>, 152 N.H. at 308 (noting lease provided for annual rent increases). Therefore, we conclude that the intended restraint created by the lease, as interpreted by the trial court, is reasonable in view of the justifiable interests of the parties. <u>See</u> <u>Winecellar</u>, 162 N.H. at 266.

The plaintiffs argue that the rental payments are not commensurate with the burden on the property. However, the trial court found that the lease was part of the consideration for the deed from the Rozelles to the Brownings, which constitutes additional compensation for the lease. The plaintiffs cannot now relieve themselves of a binding lease on the basis that, in hindsight, they believe that the Brownings did not negotiate sufficient rent. <u>See</u> <u>Pope</u>, 152 N.H. at 207.

2

The plaintiffs argue that if "issue" means lineal descendants, then "an unlimited and indeterminable number of people could use . . . [their] land over an endless period of time" and that "[w]hat may be reasonable now will become impractical in time and ultimately unworkable, and thus unenforceable . . . and practically impossible to continue." However, the plaintiffs cannot now relieve themselves of the lease because they speculate that its terms may become impractical at some undetermined time in the future. See Pope, 152 N.H. at 308 (holding landlord's belief rent insufficient based upon current conditions did not make perpetually renewable lease unreasonable restraint); Motion Motors, 150 N.H. at 778.

The plaintiffs argue that the Brownings and the Rozelles could not have intended the lease to extend to the Rozelles' lineal descendants because, if it extends to the lineal descendants, it is unenforceable as an unreasonable restraint and they must have intended the lease to be enforceable. However, we conclude that the lease, as interpreted by the trial court, is not an unreasonable restraint on alienation. Therefore, the Brownings' and the Rozelles' intent to create an enforceable lease is not inconsistent with the conclusion that the plain meaning of "issue" in the lease includes the Rozelles' lineal descendants. See RSA 21:20 (2012) ("The word 'issue,' as applied to the descent of estates, shall include all the lawful lineal descendants of the ancestor."); In re Richardson Trust, 138 N.H. 1, 3 (1993) (finding common meaning of "issue" is lineal descendants). We note that the fact that the lease is automatically renewed in perpetuity indicates the Brownings' and the Rozelles' intent that it benefit more than the Rozelles' issue living at the time it was executed.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.


**Eileen Fox,**
**Clerk**

3