# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2024-0068, <u>Kathryn Wolf v. Patrick Brown</u>, the court on July 1, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(3). The plaintiff, Kathryn Wolf, appeals an order of the Superior Court (<u>Smith</u>, J.) denying her request for attorney's fees. The defendant, Patrick Brown, cross-appeals an order of the Superior Court (<u>Leonard</u>, J.) granting summary judgment to the plaintiff that the defendant's timber harvest on his property constituted "commercial activity" in violation of restrictive covenants. We vacate and remand.

I.     <u>Background</u>

The following facts are supported by the record and are presented in the light most favorable to the defendant as the nonmoving party on summary judgment. <u>See</u> <u>Chartier v. Apple Therapy of Londonderry</u>, 175 N.H. 603, 607 (2023). In 2013, Norman and Patricia Davis recorded a declaration of covenants concerning certain portions of their real property in the Town of Dublin (Town). The declaration states that all deeds of lots representing the property that are approved for subdivision "shall contain the following covenants." The covenants, in pertinent part, state:

> No commercial, industrial or manufacturing activity of any kind or character, or agricultural activity for profit shall be carried on the land conveyed, provided that nothing contained herein shall prevent a doctor, dentist, lawyer, realtor, or other similar professional or business person, including an antique shop owner or business proprietor, from conducting a business or profession in a single-family residence . . . .
>
> . . . .
>
> In order to preserve the beauty of the area, no lot shall be stripped of trees, and every lot and structure thereon shall be maintained in a proper and orderly fashion so that the same will not be offensive to the neighborhood.

The Davises subdivided the land into three lots. They conveyed one lot to the plaintiff in 2016, and the other two abutting lots to the defendant in March

2021. The conveyance to the defendant noted that his lots are subject to the restrictive covenants.

In April 2021, the defendant filed with the Town a notice of intent to cut trees on sixty-four of his seventy-eight acres. See RSA 79:10, I (Supp. 2024). The defendant contracted with a timber company to harvest trees on his property. He expected to be paid $80,311 for the timber harvested. The defendant testified by affidavit that the "purpose of the timber harvest . . . was to remove certain trees from the property to encourage further tree growth and open space for a home to be built on the property." Further, the defendant's forester described that the defendant's objectives for the timber harvest were to "[m]aintain the property as enjoyable open space – for wildlife, recreation, and conservation," and "[u]pgrade the quality and health of the forest with a harvest of overmature and low-quality diseased and stagnant timber, and regenerate the forest where appropriate." The defendant testified that the timber harvest "was intended to be a one-time activity" and that he was "not engaging in an ongoing logging operation" on his property.

On June 7, the timber harvest began. On June 17, the plaintiff filed the instant suit seeking a permanent injunction enjoining the timber harvest, arguing that it violated the restrictive covenants. On June 21, the plaintiff obtained an ex parte order from the Trial Court (Leonard, J.) enjoining the harvest. About 60% of the timber marked to be cut had been harvested at that time. The defendant received approximately $45,000 for the harvested timber. Following a June 25 contested hearing, the trial court issued a preliminary injunction enjoining the defendant from further timber cutting on his property.

Subsequently, the trial court granted the plaintiff summary judgment ruling that the defendant's timber harvest breached the restrictive covenants. The court found that the defendant's timber harvest was "clearly commercial activity as it is generally defined" in violation of the covenants. The defendant unsuccessfully moved for reconsideration.

In September 2023, the Trial Court (Smith, J.) held a bench trial on the plaintiff's request for a permanent injunction and issued an order permanently enjoining further timber harvesting on the defendant's property. The court denied the plaintiff's request for attorney's fees. The plaintiff unsuccessfully moved for reconsideration on the attorney's fees issue. This appeal, and cross-appeal, followed.

II.    Analysis

On cross-appeal, the defendant argues that in granting summary judgment to the plaintiff, the trial court erred in concluding that the tree harvest constituted commercial activity in violation of the restrictive covenants. The plaintiff disagrees, arguing that the defendant "unambiguously engaged in

2

'commercial activity' of 'any kind or character'" when he hired a forester and agreed to sell timber for $80,311. We agree with the defendant.

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits filed, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RSA 491:8-a, III (2010). When reviewing a trial court's grant of summary judgment, we consider the parties' affidavits, other evidence, and all inferences properly drawn from them in the light most favorable to the nonmoving party. Chartier, 175 N.H. at 607. If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, the grant of summary judgment is proper. Id. We review the trial court's application of the law to the facts de novo. Id.

Resolving this appeal requires interpretation of the restrictive covenants that are part of the defendant's deed. The proper interpretation of a deed is a question of law for this court. Lynch v. Town of Pelham, 167 N.H. 14, 20 (2014). We review the trial court's interpretation of a deed de novo. Id. When interpreting a deed, we give it the meaning intended by the parties at the time they wrote it, taking into account the surrounding circumstances at that time. Id. If the language of the deed is clear and unambiguous, we will interpret the intended meaning from the deed itself without resort to extrinsic evidence. Id. Cases involving restrictive covenants present such a wide spectrum of differing circumstances that each case must be decided on its own facts. Chase v. Joslin Management Corp., 128 N.H. 336, 338 (1986).

The covenants prohibit "commercial . . . activity of any kind or character . . . carried on the land" with the exception that a professional or business person may conduct a profession or business in a single-family residence. The language's unambiguous and plain meaning generally prohibits operating commercial businesses for profit on the land. The language does not, however, prohibit an isolated exchange of money for goods that occurs on the land — like the defendant's timber harvest. Our interpretation is informed by the covenants' express exclusion for certain businesses operated in a single-family residence. The exclusion suggests that commercial businesses that operate on the land, outside the confines of a single-family residence, are prohibited commercial activity. Activities conducted on the land that do not constitute the operation of a commercial business are not prohibited. The defendant's activity — hiring of a timber company to harvest trees on his property, and selling the timber — does not constitute operating a commercial business on the land.

We find further support for this interpretation by reading the "tree stripping" covenant in conjunction with the "commercial activity" covenant. See Motion Motors v. Berwick, 150 N.H. 771, 776 (2004) (considering the provisions of a deed together as a whole). The provision states: "In order to

3

preserve the beauty of the area, no lot shall be stripped of trees, and every lot and structure thereon shall be maintained in a proper and orderly fashion so that the same will not be offensive to the neighborhood." This language suggests that a selective timber harvest, like the defendant's, that does not amount to a clear-cutting of the lot is not a prohibited "commercial activity." Indeed, a limited tree harvest to promote the health of the forest — to remove "overmature and low-quality diseased and stagnant timber" — appears plainly contemplated by the language "every lot . . . shall be maintained in a proper and orderly fashion." It would be anomalous to permit limited timber harvests necessary for the preservation of the beauty of the area and the maintenance of the property, and yet prohibit the same conduct as "commercial activity."

In sum, viewing the evidence in the light most favorable to the defendant, we cannot conclude that the defendant's isolated timber harvest amounts to "commercial activity" within the meaning of the covenants. Accordingly, the trial court erred in granting summary judgment to the plaintiff on this issue and its summary judgment order is vacated. Because the court's order on the merits following the bench trial was premised on the plaintiff prevailing on summary judgment, that order is also vacated, and the case is remanded. Given this resolution, we need not address the plaintiff's appeal regarding the trial court's denial of her request for attorney's fees.

<u>Vacated and remanded</u>.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,
Clerk**