NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

—————————————

Wetlands Council
No. 2017-0142

APPEAL OF N. MILES COOK, III
(New Hampshire Wetlands Council)

Argued: November 16, 2017
Opinion Issued: May 4, 2018

Wadleigh, Starr & Peters, P.L.L.C., of Manchester (Michael J. Tierney on the brief and orally), for N. Miles Cook, III.

Gordon J. MacDonald, attorney general (Mary E. Maloney, assistant attorney general, on the brief and orally), for New Hampshire Department of Environmental Services.

LYNN, C.J. The petitioner, N. Miles Cook, III, appeals a ruling of the Wetlands Council (Council) upholding the decision of the New Hampshire Department of Environmental Services (DES) denying his request for a permit to reconstruct and extend his dock on the Piscataqua River. We vacate and remand.

The following facts were found by the Council, or are otherwise derived from the administrative record. The petitioner owns property on the Piscataqua River in Dover. In 2006, he obtained a wetlands permit to construct "a tidal docking structure to serve his private residence," which provides

"partial tide access." In March 2015, the petitioner applied to DES for a permit to reconstruct and extend the existing dock for the purpose of providing him with "reasonable access to navigable water." In his application, the petitioner maintained that "[t]he existing dock . . . does not provide reasonable access to navigable public water over more [than] half of the tidal cycle, and provides problematic access during almost all of the tidal cycle." As a result, he contended that "a larger dock is <u>needed</u>" for him to reasonably exercise his "access rights at this property."

In October, DES denied the application, citing seven findings in support of its decision. As relevant here, DES found that the petitioner failed to demonstrate "need" pursuant to New Hampshire Administrative Rules, Env-Wt 302.01(a) and 302.04(a)(1) (respectively, Env-Wt 302.01 and Env-Wt 302.04) because he "has an existing dock with partial tide access, a mooring in the Piscataqua River in front of the subject property, and the ability to become part of the Brickyard Estates Dockowner's Association and use the all-tide access dock on the abutting property to access his mooring." In that same paragraph, DES found that the petitioner's "plan shows that there will be no more water depth at the new proposed float location at 280' from shore, than is available to the applicant with his current 107' dock." It also determined that extending the petitioner's dock did not meet the "public good" requirement in Env-Wt 302.01(a) because the use of the community dock structure was available and the community dock was "constructed to serve many users in one location and thereby minimize impacts."

The petitioner appealed to the Council. Following an adjudicatory hearing and subsequent deliberations, the Council issued a decision denying the petitioner's appeal. In its decision, the Council noted that "[t]he central issue in [the petitioner's] appeal . . . is whether [he] could justify the expanded dock proposal based on his 'need' to access navigable water on a more frequent basis than he currently experiences with the existing dock." The Council explained that it was evenly split on whether the petitioner had met his burden to demonstrate that DES acted unlawfully or unreasonably by finding that he failed to prove that he had a "need" for the expanded dock within the meaning of Env-Wt 302.01(a). The Council also evenly split their votes on whether the petitioner had satisfied his burden of demonstrating that DES erred by finding that "there was no more usable water at the proposed dock compared with the existing dock." The Council further explained that it was either "evenly divided" or had not specifically voted on the issues raised respecting DES's other findings in support of denial.

Finally, the Council explained that its members "split their vote five in favor, five against" whether the petitioner had met his burden to demonstrate that DES's decision was unlawful or unreasonable. Therefore, the Council concluded that the petitioner did not meet his burden of demonstrating that

2

DES erred by denying his permit because the petitioner "failed to convince a majority of the Council that DES acted illegally or unreasonably." The petitioner's motion for reconsideration was denied, and this appeal followed.

RSA chapter 541 governs our review of Council decisions. See RSA 21-O:14, III (Supp. 2017). Under RSA 541:13 (2007), we will not set aside the Council's order except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable. The Council's findings of fact are presumed prima facie lawful and reasonable. RSA 541:13. In reviewing the Council's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but, rather, to determine whether the findings are supported by competent evidence in the record. Appeal of Michele, 168 N.H. 98, 105 (2015). We review the Council's rulings on issues of law de novo. Id.

On appeal, the petitioner argues that DES erred by requiring him to demonstrate a need for an expanded dock because need is not required by RSA chapter 482-A (2013 & Supp. 2017), which governs fill and dredge in wetlands. Nonetheless, he maintains that, even if "need" is required, DES improperly applied the need requirement in this case. The petitioner further argues that "there were several procedural errors at the [Council's adjudicatory] hearing and deliberations." Specifically, he contends that the Council erred by: (1) not reaching a decision pursuant to RSA 482-A:10, VI (2013) because the votes were split five to five; (2) allowing a council member to vote after attending only part of the deliberations; and (3) failing to maintain a complete audio recording of the adjudicatory hearing as required by RSA 541-A:31, VII (2007).

We begin by addressing the petitioner's argument that DES erred by requiring that he demonstrate a need to expand his dock as a requirement for approval of his application. He contends that RSA chapter 482-A "does not require an applicant to show 'need'" and, therefore, the need requirement in Env-Wt 302.01(a) and Env-Wt 302.04(a)(1) impermissibly adds to the statutory scheme. DES counters that the need requirement reflects the purpose of the chapter as articulated in RSA 482-A:1 (2013), and was properly promulgated pursuant to "RSA 482-A:11, which directs the Commissioner to adopt reasonable rules to implement the purposes of" RSA chapter 482-A.

Resolving this issue requires us to engage in statutory and regulatory interpretation. We review the interpretation of statutes and regulations de novo. See Bach v. N.H. Dep't of Safety, 169 N.H. 87, 91 (2016). We use the same principles of construction when interpreting both statutes and administrative rules. Id. at 92. When interpreting statutes, "we are the final arbiters of the legislature's intent, as expressed in the words of the statute considered as a whole." Petition of Sawyer, 170 N.H. 197, 203 (2017) (quotation and brackets omitted). "We first examine the language of the

statute, and, where possible, ascribe the plain and ordinary meanings to the words used." Id. (quotation omitted). "Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme." Id. (quotation omitted).

While the legislature may delegate to administrative agencies the power to promulgate rules necessary for the proper execution of the laws, this authority "is designed only to permit the [agency] to fill in the details to effectuate the purpose of the statute." Appeal of Wilson, 161 N.H. 659, 662 (2011) (quotation omitted). "Thus, administrative rules may not add to, detract from, or modify the statute which they are intended to implement." Id. (quotation omitted). Moreover, agency regulations that contradict the terms of a governing statute exceed the agency's authority. Id.

RSA chapter 482-A as a whole regulates fill and dredge in wetlands. RSA 482-A:1 states the purpose of the chapter:

> It is found to be for the public good and welfare of this state to protect and preserve its submerged lands under tidal and fresh waters and its wetlands, (both salt water and fresh-water), as herein defined, from despoliation and unregulated alteration, because such despoliation or unregulated alteration will adversely affect the value of such areas as sources of nutrients for finfish, crustacea, shellfish and wildlife of significant value, will damage or destroy habitats and reproduction areas for plants, fish and wildlife of importance, will eliminate, depreciate or obstruct the commerce, recreation and aesthetic enjoyment of the public, will be detrimental to adequate groundwater levels, will adversely affect stream channels and their ability to handle the runoff of waters, will disturb and reduce the natural ability of wetlands to absorb flood waters and silt, thus increasing general flood damage and the silting of open water channels, and will otherwise adversely affect the interests of the general public.

Env-Wt 302.01(a) specifies that "[f]or tidal wetlands, need shall be demonstrated by the applicant prior to department approval of any alteration of tidal wetlands. No project shall be allowed that intrudes into a tidal wetland unless the department finds it to be for the public good as set out in RSA 482-A:1."

We agree with the petitioner that the language of RSA 482-A:1 and the accompanying statutes in the chapter do not specify need as a requirement for applicants seeking a wetlands permit under RSA chapter 482-A. Viewing the statutory scheme as a whole, however, we conclude that the need requirement in Env-Wt 302.01(a) and Env-Wt 302.04(a)(1) is a reasonable rule for carrying

4

out DES's function, see RSA 21-O:1, II (2012), and that it does not conflict with RSA 482-A:1.  The purpose of RSA chapter 482-A is to "protect and preserve [the state's] submerged lands under tidal and fresh waters and its wetlands . . . from despoliation and unregulated alteration."  RSA 482-A:1.  The legislature charged the commissioner of environmental services with adopting "reasonable rules, pursuant to the rulemaking provisions of RSA 541-A, to implement" this purpose.  RSA 482-A:11, I (2013) ; see also RSA 482-A:2, I (2013).  Given the stated purpose of RSA chapter 482-A, see RSA 482-A:1, we believe that it is reasonable for DES to require a permit applicant to demonstrate a need for any alteration of those submerged lands and wetlands.  In this way, Env-Wt 302.01(a) merely fills in the details of RSA chapter 482-A to effectuate the chapter's purpose.  See Appeal of Wilson, 161 N.H. at 662.

Nonetheless, the petitioner argues that even if need is a proper requirement for obtaining a permit, DES erred by "applying the wrong definition of need and improperly looking at offsite structures."  Relying upon Appeal of Town of Nottingham, 153 N.H. 539 (2006), the petitioner contends that the term "need" means "requisite, desirable, or useful," and that both DES and the Council erred by failing to apply a definition of need consistent with this definition. (Quotation and bolding omitted.)

DES disagrees that need as used in Env-Wt 302.01(a) and Env-Wt 302.04(a)(1) should be defined as we defined it in Appeal of Town of Nottingham.  DES does not offer a clearly defined alternative meaning for the term need,  but contends that it "has consistently interpreted [need] in the context of dock permits in a manner that reflects the purpose of the statute, and also an applicant's common law right to wharf out."

In Appeal of Town of Nottingham, we interpreted the term "need" in the context of whether an applicant seeking a large groundwater withdrawal permit under RSA chapter 485-C, the Groundwater Protection Act, had made the requisite showing of need as required by RSA 485-C:4, XII(b) (2001) (amended 2006) and DES's rules.  Appeal of Town of Nottingham, 153 N.H. at 553.  The version of RSA 485-C:4, XII in effect at that time directed DES to adopt rules relating to "new groundwater withdrawals of 57,600 gallons or more in any 24-hour period," including "requirements relative to conservation management plans which demonstrate the need for the proposed withdrawals."  Id. (quotations and brackets omitted).  In turn, former New Hampshire Administrative Rules, Env-Ws 388.05 required the applicant to "prepare a water conservation management plan and description of need to demonstrate the efficient use of, and need for, the proposed withdrawal in the permit application."  Id. (quotation omitted).

Noting that the legislature had failed to define "need" in RSA chapter 485-C, we looked to the plain and ordinary meaning of the term.  Id.  We

5

concluded that the most relevant definition of "need" in Webster's Dictionary is "'a want of something requisite, desirable, or useful.'" Id. (quoting Webster's Third New International Dictionary 1512 (unabridged ed. 2002)). Thus, we held that RSA 485-C:4, XII(b) and former New Hampshire Administrative Rules, Env-Ws 388.05 required DES to determine whether the applicant's proposed withdrawal was "requisite, desirable, or useful." Id. (quotation omitted).

Similarly, here, DES has failed to define the term "need" in Env-Wt 302.01(a) or in Env-Wt 302.04(a)(1) governing requirements for an application. See N.H. Admin. R., Env-Wt 101; see also N.H. Admin. R., Env-Wt 302.04. When regulatory terms are undefined, we ascribe to them their plain and ordinary meaning. See Appeal of Town of Nottingham, 153 N.H. at 555; see also Petition of Hagenbuch, 169 N.H. 555, 560 (2017). As in Appeal of Town of Nottingham, we conclude that the most relevant definition of "need" is "a want of something requisite, desirable, or useful." Webster's Third New International Dictionary, supra at 1512. Accordingly, Env-Wt 302.01(a) and, in turn, Env-Wt 302.04(a)(1) require an applicant to demonstrate "a want of something requisite, desirable, or useful" prior to approval of any project that alters tidal wetlands. Id.

DES argues that we should not adopt the same definition of need for Env-Wt 302.01(a) and Env-Wt 302.04(a)(1) that we did in Appeal of Town of Nottingham because RSA chapter 485-C and RSA chapter 482-A are two "entirely different" chapters, and defining need as we did in that case "would not be consistent with the purposes identified by the legislature in RSA 482-A:1." We are not, however, merely adopting the definition of "need" used in Appeal of Town of Nottingham in a different context. Rather, as in Appeal of Town of Nottingham, in accordance with our rules of statutory and regulatory construction, we are ascribing to the term its plain and ordinary meaning as found in the dictionary. See Appeal of Town of Nottingham, 153 N.H. at 555.

DES further contends that, given its "fair and consistent application of guidelines," the doctrine of administrative gloss supports its interpretation of need. We disagree. "The doctrine of administrative gloss is a rule of statutory construction. Administrative gloss is placed upon an ambiguous clause when those responsible for its implementation interpret the clause in a consistent manner and apply it to similarly situated applicants over a period of years without legislative interference." Appeal of Stewart, 164 N.H. 772, 776 (2013) (quotation omitted). However, "a lack of ambiguity in a statute or ordinance precludes application of the administrative gloss doctrine." Anderson v. Motorsports Holdings, 155 N.H. 491, 502 (2007). Here, the term "need" is not ambiguous.

Because DES did not have the benefit of our interpretation of the term "need" as used in Env-Wt 302.01(a) and Env-Wt 302.04(a)(1) for determining

whether an applicant has met the permit requirements, and because, as the Council noted, the central issue was whether the petitioner "could justify the expanded dock proposal based on his 'need' to access navigable water on a more frequent basis than he currently experiences with the existing dock," we vacate DES's decision and remand to the Council with instructions to remand to DES for further consideration in light of the definition we have adopted herein.

Although we have vacated DES's decision, we nonetheless address the petitioner's argument that DES erred by determining that the petitioner failed to demonstrate a need for the expanded dock because he could "use a dock on a different property," as the issue may arise on remand.  See Axenics, Inc. v. Turner Constr. Co., 164 N.H. 659, 673 (2013).  In its denial of the petitioner's permit application, DES found that the petitioner failed to meet the need requirement in Env-Wt 302.01(a) and Env-Wt 302.04(a)(1) because he "has an existing dock with partial tide access, a mooring in the Piscataqua River in front of the subject property, and the ability to become part of the Brickyard Estates Dockowner's Association and use the all-tide access dock on the abutting property to access his mooring."  We agree with the petitioner that his ability to use an all-tide access dock on an abutting property is not relevant to whether he has demonstrated "need," i.e., "a want of something requisite, desirable, or useful," for further access on his property.  See Lakeside Lodge v. Town of New London, 158 N.H. 164, 169 (2008) ("Littoral rights are incidental property rights associated with ownership of lakeshore property." (quotation omitted)); Donaghey v. Croteau, 119 N.H. 320, 323 (1979) ("In New Hampshire, the right to wharf out to navigable depth has long been recognized as a common-law littoral right."); see also Appeal of Michele, 168 N.H. at 103-04 ("Instead of altering the state of property rights under the common law, the purpose of [RSA chapter 482-A] is to 'protect and preserve the state's submerged lands under tidal and fresh waters and its wetlands from despoliation and unregulated alteration.'" (brackets and ellipsis omitted)).

In light of our decision, we need not address the petitioner's procedural error arguments.  Finally, any issues raised in the petitioner's notice of appeal or in his brief that are not adequately developed are deemed waived.  See State v. Blackmer, 149 N.H. 47, 49 (2003).

Vacated and remanded.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred; DALIANIS, C.J., retired, specially assigned under RSA 490:3, concurred.