NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Wetlands Council
No. 2014-509

APPEAL OF ROBERT C. MICHELE & a.
(New Hampshire Wetlands Council)

Argued: April 22, 2015
Opinion Issued: August 11, 2015

Cleveland, Waters and Bass, P.A., of Concord (David W. Rayment and Mark S. Derby on the brief, and Mr. Rayment orally), for the petitioners.

Johnson & Borenstein, LLC, of Andover, Massachusetts (Mark B. Johnson on the brief and orally), for the respondents.

LYNN, J. The petitioners, Robert C. and Katherine L. Michele, trustees of the Robert C. Michele Revocable Trust (Micheles), appeal a ruling of the Wetlands Council (Council) upholding a decision of the New Hampshire Department of Environmental Services (DES) to issue a permit allowing the respondents, Joseph and Linda Bremner (Bremners), to install a seasonal dock in water adjacent to the Micheles' pond-front property over which the Bremners have an easement. We affirm.

I

The following facts are derived from the record. The Micheles own property in Jaffrey with approximately 750 feet of shoreline on Gilmore Pond.

The Bremners own nearby property that does not directly adjoin the pond. At one time, the Bremners' and Micheles' properties were a single parcel, owned by George and Karen Rickley (Rickleys). When the Rickleys conveyed what is now the Bremners' property, they sought approval to subdivide a section of their 750 feet of shoreline to accompany the plot. The town planning board denied the request, and the Rickleys instead conveyed the plot with an easement over a 118-foot segment of their shoreline.[1] The relevant language of the deed states that the owner of the partitioned lot (now the Bremners) "shall have the right under this easement to the exclusive use of said parcel of shore frontage for whatever purposes they may desire." The Micheles bought their property with full knowledge of the easement.

In 2007, the Bremners applied to DES for a permit to install a seasonal dock in the pond, adjacent to their easement. See RSA 482-A:3 (Supp. 2007) (subsequently amended). The Micheles objected to the application, arguing that the Bremners had no legal right to apply for a dock permit on the Micheles' land without their consent. In 2009, DES granted the permit, and the Bremners installed a dock. The Micheles promptly filed both a motion for reconsideration and an action in superior court seeking to invalidate the easement. DES took no further action pending the outcome of the lawsuit. The superior court determined that the easement was valid, and in a 2011 unpublished order, we affirmed the court's ruling. See Michele v. Bremner, No. 2010-0844 (N.H. Aug. 24, 2011). Thereafter, DES affirmed its grant of the permit. It found that the Bremners' dock qualified as a minimal impact project, see N.H. Admin. Rules, Env-Wt 303.04(a), and concluded that, because under its regulations only major shoreline structures require that the fee owner be the applicant, see id. 402.18(a), the Bremners could apply for a dock permit. DES also found that the Micheles failed to demonstrate that the seasonal dock unreasonably affected the value or their use and enjoyment of their property. The Micheles appealed to the Council, which affirmed the DES decision. This appeal followed.

II

The Micheles first argue that DES erred in granting the Bremners, as mere easement holders, a permit to install a seasonal dock over the fee owners' objection. Rather than argue that the Bremners lack a sufficient property interest to install a dock in the water adjacent to the easement, they contend that, under the relevant statutes, DES lacks the authority to issue dock permits to easement holders. In support of this argument, the Micheles advance several theories: (1) the plain meaning of the terms "ownership" and "landowner-applicant" as used in the statutory scheme compel the conclusion

---

[1] There is some discrepancy as to how much of the shoreline is encompassed in the easement. The exact size is immaterial to the current appeal, and we adopt the 118-foot figure used by DES and the Council.

that only fee owners can apply for a dock permit, see RSA 482-A:11, II (2013); (2) DES, in interpreting the statute, impermissibly went beyond its plain meaning by examining DES regulations; and (3) the instructions and forms that DES uses to administer the statute demonstrate that only fee owners can apply for permits. Alternatively, the Micheles argue that even if the Bremners could apply for a permit under the statute, DES erred in granting a permit because it adversely affected the value and enjoyment of their land.

The Bremners counter that a plain reading of the statute shows that it does not prohibit easement holders from applying for dock permits. They also maintain that this reading is consistent with the statute's purpose, DES's regulations, and DES's forms and procedures. Additionally, the Bremners contend that the issuance of the permit in this case was reasonable, and that many of the Micheles' arguments are based upon unpreserved or irrelevant considerations.

To resolve these issues, we must engage in statutory and regulatory interpretation. Although we give some deference to an agency's interpretation of its own regulations or of a statute it administers, "our deference is not total." Appeal of Old Dutch Mustard Co., 166 N.H. 501, 506 (2014) (quotation omitted). Concerning statutes, "[w]e are still the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole." Appeal of Town of Seabrook, 163 N.H. 635, 644 (2012). As to regulations, "[w]e examine the agency's interpretation to determine if it is consistent with the language of the regulation and with the purpose which the regulation is intended to serve." Old Dutch Mustard, 166 N.H. at 506 (quotation omitted). "We use the same principles of construction when interpreting both statutes and regulations." Id.

"We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." Appeal of Local Gov't Ctr., 165 N.H. 790, 804 (2014). "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. "We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." Id. "Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole." Id. "This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme." Id. Additionally, "[w]hen the language of a statute is plain and unambiguous, we need not look beyond the statute itself for further indications of legislative intent." Petition of Malisos, 166 N.H. 726, 729 (2014).

3

RSA 482-A:3, I, requires that "any person" who wishes to construct a dock must apply to DES for a permit, unless an exemption applies.[2] The statute further specifies other requirements that an "applicant" must fulfill. See RSA 482-A:3, I(d)(1) (notifying abutters). RSA 482-A:11, II then provides, in relevant part, that "[b]efore granting a permit under this chapter, the department may require reasonable proof of ownership by a private landowner-applicant." (Emphasis added.) The Micheles rely primarily upon the legislature's use of the terms "ownership" and "landowner-applicant" in RSA 482-A:11, II to support their position that only fee owners can apply for dock permits. The legislature did not define the terms "owner," "ownership," "landowner," "landowner-applicant" or "applicant." See RSA 482-A:2 (Supp. 2011) (amended 2012).

"When a term is not defined in the statute, we look to its common usage, using the dictionary for guidance." K.L.N. Construction Co. v. Town of Pelham, 167 N.H. 180, 185 (2014). Webster's Third New International Dictionary defines "ownership" as "the state, relation, or fact of being an owner: lawful claim or title"; and "owner" as "one that has the legal or rightful title whether the possessor or not." Webster's Third New International Dictionary 1612 (unabridged ed. 2002) (emphasis added). We acknowledge that these are broad definitions. We see no reason, however, to limit the meaning of the terms when the legislature did not see fit to do so. Based upon the common meaning of the term, we conclude that "ownership," as used in the statute, neither is limited to fee ownership nor requires possession. We further conclude that parties who hold title to a shoreline easement, such as the Bremners, are "owners" under the statute. Because the term "owner" encompasses property interests other than fee ownership, the Micheles' citation to the repeated use of the terms "owner," "property owner," and "landowner" throughout the statutory scheme does not advance their argument.

Contrary to the Micheles' argument that the legislature could not have intended easement holders to be able to apply for a permit under the statute, we see no evidence that the purpose of the statute was to change the balance of property rights between fee owners and easement holders from what it was under the common law. As the Micheles point out, we have previously noted that an "easement is a nonpossessory right to the use of another's land." Arcidi v. Town of Rye, 150 N.H. 694, 698 (2004). As explained above, however, possession is not a requirement of an "ownership" interest in land. Further, in Arcidi, we said that when there is an express grant of an easement, "a grantee takes by implication whatever rights are reasonably necessary to enable it to enjoy the easement beneficially. This includes the right to make improvements

---

[2] We observe that, although RSA 482-A:3, IV-a would normally exempt a low impact seasonal dock, such as the one at issue, from the permit requirements, the proposed dock must be the only dock on the frontage to qualify for the exemption. The Bremners' dock does not qualify for such an exemption because the Micheles already have a dock on the frontage.

that are reasonably necessary to enjoy the easement." Id. at 701 (citation omitted). Arcidi concerned an easement over the plaintiff's land for "ingress and egress by motor vehicle." Id. at 697 (quotation omitted). We held that it was reasonable for the easement holder to cut down trees, fill in wetlands and build a gravel road across the easement. Id. at 697, 702. We conclude that, under the common law, installing a dock — arguably a less impactful project — can be a reasonable use of an easement in at least some circumstances.[3]

Instead of altering the state of property rights under the common law, the purpose of the statute is "to protect and preserve [the state's] submerged lands under tidal and fresh waters and its wetlands . . . from despoliation and unregulated alteration." RSA 482-A:1 (2013). It follows, therefore, that anyone who could build a dock under the common law can apply for a dock permit under RSA chapter 482-A. Given the broad grant of the Bremners' easement, they have a sufficient ownership interest to obtain a dock permit under RSA chapter 482-A.

The Micheles contend that this interpretation of the statute will impermissibly force DES to decide the relative property rights of parties with competing interests. We have previously stated that DES's authority to regulate docks "does not include the power to determine the relative rights of property owners." Gray v. Seidel, 143 N.H. 327, 330 (1999). Gray, however, involved an appeal of a superior court order which determined that, because DES and other local authorities regulate docks, the court lacked jurisdiction to decide whether building a dock was a reasonable use of the plaintiffs' easement. Id. at 329-30. We reversed, holding that the court did have jurisdiction to rule on the question of whether the plaintiffs' proposed dock constituted a reasonable use of the easement. Id. at 330. Gray stands merely for the proposition that DES's authority to regulate docks does not divest the courts of jurisdiction to decide underlying property rights. Nothing in that case alters the fact that, in issuing any dock permit, DES must necessarily decide whether the applicant has met the statutory and regulatory criteria. Thus, DES retains the authority to determine whether an applicant has a sufficient property interest to apply for a dock permit.

Although we need not look beyond the plain and unambiguous terms of the statute to ascertain the legislative intent in this case, see Petition of Malisos, 166 N.H. at 729, we note that DES's regulations are consistent with our ruling. The commissioner of DES is empowered to adopt regulations to implement RSA chapter 482-A. RSA 482-A:11, I (2013). DES regulations

---

[3] Indeed, the issue of whether the Bremners' dock is an unreasonable use of the easement under the common law has already been litigated. In 2014, a superior court found that the Bremners' dock was a reasonable use of the easement but ordered the Bremners to remove their personal property from the easement. The Micheles have not appealed this ruling. The Bremners appealed the decision to the extent that it bars them from leaving certain personal property on the easement, but that issue is not before us today.

5

define "applicant" as someone "who has applied for a permit" and has "an interest in the land on which a project is to be located that is sufficient for the person to legally proceed with the project." N.H. Admin. Rules, Env-Wt 101.06. The regulations also state that "[a]n applicant for a shoreline structure defined as major shall be the owner in fee." Id. at 402.18. DES read these regulations to mean that only applicants for major projects need be the fee owner; applicants for minor projects, like the Bremners' dock,[4] may have a lesser ownership interest. We agree with DES's interpretation of these regulations.

The Micheles also assert that because the DES application forms and instructions ask for the "owner's" information and because the forms have no place on them to identify the applicant as an easement holder, it must follow that only fee owners can apply for a permit. This argument is based upon the same misunderstanding of the meaning of the term "owner" as was discussed above. Because a person who holds an easement interest in property is an "owner" thereof, the absence of additional language in the forms and instructions specifically referencing easement holders provides no support for the Micheles' position.

III

Alternatively, the Micheles argue that even if an easement holder can apply for a permit under the statute, DES and the Council erred in upholding the permit in this case because the Bremners' dock adversely affects the value and enjoyment of the Micheles' property. DES cannot grant a dock permit if doing so will "infringe on the property rights or unreasonably affect the value or enjoyment of property of abutting owners." RSA 482-A:11, II. Whether a permit infringes upon property rights or unreasonably affects the value or enjoyment of another's land is a determination of fact. Cf. Webb v. Rye, 108 N.H. 147, 150 (1967) (stating that whether, under the circumstances, a land use was unreasonable and constituted a nuisance is a question of fact). RSA chapter 541 governs our review of Council decisions. See Appeal of Dean Foods, 158 N.H. 467, 471 (2009). Under RSA 541:13 (2007), we will not set aside the Council's order except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable. The Council's findings of fact are presumed prima facie lawful and reasonable. RSA 541:13. In reviewing the Council's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but, rather, to determine whether the findings are supported by competent evidence in the record. See Dean Foods, 158 N.H. at 474. We review the Council's rulings on issues of law de novo. Appeal of Portsmouth Regional Hosp., 148 N.H. 55, 57 (2002).

---

[4] The Micheles do not contend that the Bremners' dock constitutes a major shoreline structure.

The Micheles advance several reasons why, in their view, the issuance of the dock permit was unreasonable. They first argue that they are entitled to greater protection than that which RSA 482-A:11, II generally provides because, as fee owners, they have a greater interest than abutting property owners. The statute, however, provides no extra protection for fee owners whose properties are encumbered by water access easements, and we will not add language to the statute that the legislature did not see fit to include. Local Gov't Ctr., 165 N.H. at 804. In any event, a property owner who has granted an easement to a third party logically has a lessened — not a heightened — expectation of unencumbered use and enjoyment of his property as compared to a property owner who has not surrendered any interest in his property and is instead seeking protection against interference from an abutter. Consequently, even if we were to assume that DES or the Council erred by treating the Micheles as "abutting owners" under RSA 482-A:11, II, any such error was not prejudicial because it afforded the Micheles more protection than that to which they were entitled under the statute.

The Micheles next contend that the installation of the dock reduces their privacy and seclusion.[5] After a hearing, at which Mrs. Michele was the sole witness for the petitioners, the Council determined that the Micheles failed to show that the permit unreasonably infringed upon their property rights. It also found that the Micheles were aware of the easement when they purchased their property and that a single witness's subjective testimony failed to show that a small, seasonal dock unreasonably affected the use and enjoyment of the Micheles' land. We cannot say that these findings lack evidentiary support in the record or are unjust or unreasonable.[6]

The Micheles next assert that installation of the dock increased their shorefront liability while eliminating any control they have over the easement area. Their risk is compounded, they argue, by increased incidences of vandalism and trespassing on the easement. Mrs. Michele testified that, as a result of the Bremners' dock, the Micheles' insurance agent advised them to increase their liability coverage. Although agreeing that the dock will likely subject the Micheles to suit if an injury occurs on or around the easement area, the Council found this was inadequate to make installation of the dock

---

[5] The Micheles point to testimony that the Bremners cut down trees from the easement area. This, according to the Micheles, removed a natural screen and caused a community uproar for which the Micheles were blamed. The dock permit, however, did not allow the Bremners to cut down trees. In fact, the Bremners removed the trees before applying for the dock permit. Thus, the tree removal is irrelevant to the issue of whether the permit affected the Micheles' use and enjoyment of their land.

[6] The Micheles also argue that the installation of the dock represented a departure from the intensity of use of the easement established by the Bremners' predecessors in title. That argument concerns the parties' relative property rights and not whether the permit violates RSA 482-A:11, II. Therefore, it is outside the scope of the Council's decision, see Gray, 143 N.H. at 330, and we need not address it.

unreasonable. The Micheles, when they bought the property, knew that they were responsible for insuring the easement area. Further, the Micheles are incorrect in claiming that they have lost all control of the easement area. The Bremners enjoy only the right to make reasonable use of their easement, which includes using it to access the pond and their dock; the Micheles retain the right to seek relief in court should the Bremners make unreasonable use of the easement.

Finally, the Micheles maintain that the placement of the dock thirteen feet from the easement boundary was unreasonable. RSA 482-A:3, XIII(a) states that "[a]ll boat docking facilities shall be at least 20 feet from an abutting property line in non-tidal waters . . . ." (Emphasis added.) We understand their argument to be that, because DES treated them as abutting owners under RSA 482-A:11, II, it also should have treated them as abutting owners under RSA 482-A:3, XIII(a). We disagree. As noted above, to the extent DES may have treated the Micheles as abutting property owners for purposes of RSA 482-A:11, II, it afforded them more protection than that to which they were entitled. We are aware of no legal principle that would require DES to compound any such error by treating the Micheles as abutting property owners under RSA 482-A:3, XIII(a) as well. On the contrary, DES and the Council correctly determined that the 20-foot setback requirement did not apply in the easement context because the owners of the dominant and servient estates hold overlapping rather than abutting property interests. Therefore, RSA 482-A:3 XIII(a) is not applicable.[7] The record reflects that the Bremners chose the location of the dock so as to create the least impact to the shoreline. We hold that the Council did not err in upholding DES's approval of the location of the dock.

IV

For the foregoing reasons, we conclude that the Council did not err in upholding DES's decision to grant a dock permit to the Bremners.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.

---

[7] For the same reason, we also reject the Micheles' argument that DES's inconsistent treatment of them under the statutory scheme is indicative of a legislative intent that only fee owners can apply for permits.

8