**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2016-0550, <u>Appeal of David Drolet & a.</u>, the court on September 15, 2017, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The appellants, ten owners of real estate abutting a proposed residential development (abutters), appeal an order of the New Hampshire Wetlands Council (Council) affirming a decision by the New Hampshire Department of Environmental Services (DES) granting a permit to the intervenor, Green & Co. (developer), allowing it to dredge and fill 630 square feet of palustrine forested wetlands for a road (permit). <u>See</u> RSA 482-A:3 (2013); RSA 482-A:10 (Supp. 2016).

The abutters contend that the Council erred by: (1) ruling that the permit could be granted under RSA 482-A:11, II (2013) and finding "no significant error in [DES's] rephrasing of the statutory language"; (2) finding that a vernal pool in the vicinity of the affected area would not be adversely impacted; (3) concluding that granting the permit "represented the least impacting alternative"; and (4) relying upon the developer's expert.

RSA chapter 541 (2007 & Supp. 2016) governs our review of Council decisions. RSA 482-A:10, VIII. The appealing party has the burden to show that the Council's decision was clearly unreasonable or unlawful. RSA 541:13 (2007). We will not set aside the Council's order except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable. <u>Appeal of Michele</u>, 168 N.H. 98, 105 (2015). We review the Council's rulings on issues of law <u>de</u> <u>novo</u>. <u>Id</u>. The Council's findings of fact are presumed <u>prima</u> <u>facie</u> lawful and reasonable. RSA 541:13. In reviewing the Council's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but, rather, to determine whether the findings are supported by competent evidence in the record. <u>Michele</u>, 168 N.H. at 105.

We first address whether the Council erred by upholding DES's finding that the "[i]ssues brought forth by abutters . . . provide no substantive evidence that this project would be deleterious to the current use of the abutting properties." RSA 482-A:11, II provides that "[n]o permit to dredge or fill shall be granted if it shall infringe on the property rights or unreasonably affect the value or enjoyment of property of abutting owners." Whether a permit infringes upon

property rights or unreasonably affects the value or enjoyment of another's land is a determination of fact. Michele, 168 N.H. at 105.

The abutters argue that DES "applied a less stringent standard of review" than the statute requires. The Council's order states that at the evidentiary hearing before it, a transcript of which the abutters have not supplied, the abutters argued that allowing "the proposed subdivision would aggravate an existing seasonal flooding situation that affected many of them." The Council noted that the abutters' expert based his opinion that this would occur upon a review of "the entire parcel designated for development," although DES and the Council's jurisdiction "extends only to the areas proposed to be affected under the Permit . . . in this case only 650 [sic] square feet of the almost 13 acres involved in the subdivision application." See Greenland Conservation Comm'n v. N.H. Wetlands Council, 154 N.H. 529, 538 (2006) (stating DES's review authority is limited to assessing impacts of construction in protected wetlands and does not extend to assessing effects of upland construction upon such wetlands). It further noted that the developer's "stormwater management plans . . . called for construction of berms and drainage ditches along the boundary with the abutters to prevent stormwater from reaching their properties" and that the developer's expert "indicated that the peak rate of runoff after the project is built will in fact be less than the existing situation."

To the extent that the abutters argue that DES and the Council should have accepted their expert's testimony, rather than that of the developer's experts, DES and the Council were not compelled to accept the opinion evidence of any witness. See Appeal of Old Dutch Mustard Co., 166 N.H. 501, 513 (2014). Whether to rely upon expert testimony is a matter for their judgment based upon the evidence presented. Id.; see Michele, 168 N.H. at 105 (stating we do not reweigh evidence upon appeal).

The Council also "found no significant error in [DES's] rephrasing of the statutory language to include the word 'deleterious.'" The abutters argue that this rephrasing shows that DES and the Council did not consider the permit's impact upon their property values, as required by RSA 482-A:11, II. However, they do not explain how those values would be affected by the permit other than by an increased risk of flooding, which the Council addressed. Furthermore, the record before us does not reflect that any evidence regarding property values was presented to the Council. Cf. Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004).

The Council "unanimously concluded that the [abutters] had failed to prove that [DES's] decision in this respect was unlawful or unreasonable under RSA [482-A:11, II]." We cannot conclude that this finding lacked evidentiary support in the record or is unjust or unreasonable. See Michele, 168 N.H. at 105.

We next address whether the Council erred by upholding DES's finding that the permit would not affect a vernal pool in the vicinity of the affected area. The abutters contend that DES relied upon the developer's representations and found the pool's potential to be very limited "despite clear and uncontradicted evidence identifying the vernal pool as functioning." However, DES found that its staff inspected the pool, determined that it "was devoid of enough water to support amphibian egg masses or to provide for the survival of juvenile aquatic life stages," and "found its potential as a functioning vernal pool to be very limited." The Council's order refers to similar testimony.

Although the abutters cite a letter from the Rockingham County Conservation District (RCCD), which states that it found "primary and secondary vernal pool indicators," the Council was not compelled to rely upon this evidence, see Old Dutch Mustard, 166 N.H. at 513, and, upon appeal, we do not reweigh the evidence, see Michele, 168 N.H. at 105. The Council found that if a vernal pool existed, it "would not be adversely affected by the project." We cannot conclude that this finding lacked evidentiary support in the record or is unjust or unreasonable. See id.

We next address whether the Council erred by upholding DES's finding that the permit "represented the least impacting alternative." An applicant for a permit must "provide evidence which demonstrates that . . . : (1) Potential impacts have been avoided to the maximum extent practicable; and (2) Any unavoidable impacts have been minimized." N.H. Admin. Rules, Env-Wt 302.03(a).

The abutters argue that there was insufficient evidence for DES to conclude that the developer met this requirement. However, the Council's order cites testimony that: (1) DES required the developer "to develop an alternative roadway layout that was further away from the vernal pool"; (2) local safety officials determined that "the turning radius of the new plan was too tight to accommodate fire department apparatus"; and (3) DES "agreed that it was not a practical solution." DES made similar findings.

The abutters contend that DES failed "to verify the veracity of" the developer's representations. However, they do not cite, nor are we aware of, any authority that DES is required to do so. The abutters argue that DES could not "properly evaluate[ ] . . . which alternative was the 'least impacting'" because it "failed to account for the natural flow of water and drainage" and the "impacts to jurisdictional wetlands . . . were under-represented." However, in the absence of a transcript, we cannot assess the sufficiency of the evidence. See Sup. Ct. R. 15(3); cf. Bean, 151 N.H. at 250.

Finally, we address whether the Council erred by "affirming [DES's] decision to rely on the [developer's] 'expert' opinions." The abutters contend that, because the developer's wetland delineation was challenged and ultimately

3

corrected to include more area, and the RCCD criticized the developer's expert's methodology, DES should have required "new delineations and studies." Moreover, they argue that, because their expert testified to inaccuracies in the developer's plan and application, the Council's affirmation of DES's "decision to rely on the [developer's] 'expert' opinions" was unreasonable and unlawful. However, the Council was not compelled to rely upon the abutters' expert, see Old Dutch Mustard, 166 N.H. at 513, and, upon appeal, we do not reweigh the evidence, Michele, 168 N.H. at 105.

To the extent that the abutters are challenging the developer's expert's qualifications, the Council found that both parties' experts were "well qualified, and each report was well reasoned." Because the abutters have not supplied a transcript of the hearing before the Council, we assume that the evidence was sufficient to support its findings. Cf. Bean, 151 N.H. at 250.

Affirmed.

Dalianis, C.J., and Hicks, Lynn, Bassett, and Hantz Marconi, JJ., concurred.

**Eileen Fox,**
**Clerk**