BASSETT, J.
The petitioner, the Town of Lincoln, appeals an order of the New Hampshire Water Council upholding a decision by the respondent, the New Hampshire Department of Environmental Services (DES), ordering the Town to repair the Pemigewasset River Levee, a fortified embankment with granite block facing, located along approximately 1,700 feet of the northwesterly bank of the East Branch of the Pemigewasset River in Lincoln. The Water Council found that the Town was the owner of the levee pursuant to RSA 482:11-a (2013), and therefore was obligated under the statute to maintain and repair the levee. We reverse.
The record supports the following facts. In 1912, the Franconia Paper Company constructed the levee on company property along the Pemigewasset River. In 1959, the levee was damaged by a flood. At town meeting in March 1960, the residents of the Town voted to approve a restoration of the levee, to be performed by the United States Army Corps of Engineers. To facilitate the project, and in order to secure federal funding for the restoration under the Flood Control Act of 1936, the residents authorized the Town to enter into agreements with the Army Corps, and to "acquire any real estate interests" necessary for the restoration project. In June 1960, the Town executed an Assurance Agreement with the Army Corps (the Assurance), obligating the Town to
(a) provide without cost to the United States, all lands, easements, and rights-of-way necessary for the construction of the project; (b) hold and save the United States free from damages due to the construction works; (c) maintain and operate all the works after completion in accordance with regulations prescribed by the Secretary of the Army.
In order to satisfy these obligations to the Army Corps, and because the Town did not own the land or the levee, in July 1960 the Town entered into a Right-of-Entry Agreement (the REA) with the fee owner, the Franconia Paper Company. The REA granted to the Town and the United States the "right to enter upon the ... lands to perform construction work of any nature necessary in the restoration of the [levee], and to enter upon said lands at any time to inspect the restored [levee] with a view to its proper maintenance and operation." The REA also provided that the Franconia Paper Company reserved for itself, and its successors and assigns, *1186 all rights in the land that would not interfere with those it had granted to the Town and the United States. Pursuant to these agreements, the reconstruction of the levee was done by the Army Corps.
In 1971, the Franconia Paper Company, then under a new corporate name, conveyed certain parcels of land to the Franconia Manufacturing Corporation by quitclaim deed. The deed provided that Franconia Manufacturing Corporation was taking the land subject to the rights previously granted to the Town and the United States, and provided that both the Town and the United States held easements enabling them to "enter the premises via the present access road or by whatever route is necessary and convenient at any time to inspect the restored flood control [levee] with a view to its proper maintenance and operation ...." (the 1971 deed). The 1971 deed also provided that
[t]he [Franconia Manufacturing Corporation], by accepting this conveyance covenants and agrees to assume and discharge the obligations of the [Franconia Paper Company] (assumed by the [Franconia Paper Company] by instruments executed ... in 1961) to maintain the [levee] on the northerly bank of said East Branch as constructed by and under the supervision of the United States Army Engineers.
In 2011, the levee was severely damaged by Tropical Storm Irene. In 2014 and 2015, DES inspected the levee and determined that it was a "dam in disrepair," classifying it as a "high hazard [potential] dam." See RSA 482:2, I, V (2013). In August 2015, DES issued a Letter of Deficiency to the Town listing the levee's defects and requesting that the Town bring the levee back into compliance. The Town responded to DES, stating that, although it was not the owner of the levee, it already had plans to complete the needed repairs. After the Town and DES failed to agree on how to proceed, DES ordered the Town to repair the levee, concluding, without express analysis, that the Town was the owner of the levee. The Town appealed the order to the Water Council.
The Water Council upheld the DES decision in an order on the parties' cross-motions for summary judgment, interpreting RSA 482:11-a, which provides that "[t]he owner of a dam shall maintain and repair the dam so that it shall not become a dam in disrepair." RSA 482:11-a. Although the Water Council found that the Town was not the fee owner of the levee, and had not acquired fee ownership through either the process of dedication and acceptance, see Hersh v. Plonski, 156 N.H. 511, 514-16, 938 A.2d 98 (2007), or a vote of the selectmen pursuant to RSA 41:14-a (2012), it also found that the Town was the owner of the levee within the meaning of RSA 482:11-a. The Water Council stated that
the Town's argument that it is not the owner of the dam within the meaning of RSA 482:11-a, and therefore not subject to DES regulatory action is rejected. The Town holds an easement interest in the dam that is sufficient for purposes of imposing on [the Town] the repair and maintenance requirements of [ RSA 482:11-a ].
The Water Council denied the Town's motion for rehearing, and this appeal followed.
RSA chapter 541 governs our review of Water Council decisions. See RSA 21-O:14, III (2012). The party seeking to set aside the Water Council's order bears the burden of proof "to show that the [order] is clearly unreasonable or unlawful." RSA 541:13 (2007). "[A]ll findings of the [Water Council] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable." Id.
*1187 "[T]he order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." Id. "In reviewing the Council's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but, rather, to determine whether the findings are supported by competent evidence in the record." Appeal of Cook, 170 N.H. 746, 749, 186 A.3d 228 (2018). We review the Water Council's rulings on issues of law de novo. See id. ; RSA 541:13.
The Town argues that the Water Council's decision is clearly unreasonable or unlawful because the Town is not the "owner" of the levee within the meaning of RSA 482:11-a. The Town does not argue that, in order to be an "owner" for the purposes of RSA 482:11-a, the person or entity must be the fee simple owner of the property. Rather, the Town contends that the word "owner" means one who has at least "legal, rightful, or equitable title" to the property at issue. The Town asserts that it does not fall within this definition because its only property interest in the levee - the right of access set forth in the REA - is insufficient to make the Town an "owner" within the meaning of RSA 482:11-a.
DES acknowledges that the Town is not the fee owner of the levee, yet it argues that fee ownership is not required by RSA 482:11-a. In support of this position, DES offers two interrelated arguments. First, citing our recent decision in Appeal of Michele, 168 N.H. 98, 102-05, 123 A.3d 255 (2015), it asserts that this court "has already determined that an easement holder is an owner for purposes of RSA 482-A." Second, DES contends that we should apply the definition of "owner" set forth in Michele, and that, if we do, the Assurance, the REA, and the 1971 deed constitute a "series of transactions" sufficient to make the Town an owner within the meaning of RSA 482:11-a. The Town contends that Michele is distinguishable and does not control. For the reasons set forth below, we agree with the Town.
Resolution of the question of whether the Town is an "owner" within the meaning of RSA 482:11-a requires that we engage in statutory interpretation. "Statutory interpretation is a question of law, which we review de novo." Petition of Carrier, 165 N.H. 719, 721, 82 A.3d 917 (2013). "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." Id. "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." Id. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. "The legislature is not presumed to waste words or enact redundant provisions and whenever possible, every word of a statute should be given effect." Garand v. Town of Exeter, 159 N.H. 136, 141, 977 A.2d 540 (2009) (quotation omitted). "We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." Carrier, 165 N.H. at 721, 82 A.3d 917. "Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole." Id. "This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme." Id.
RSA 482:11-a provides that "[t]he owner of a dam shall maintain and repair the dam so that it shall not become a dam in disrepair." RSA 482:11-a. The *1188 legislature did not define the term "owner." See RSA 482:2 (2013). "When a term is not defined in the statute, we look to its common usage, using the dictionary for guidance." Michele, 168 N.H. at 102, 123 A.3d 255 (quotation omitted). Webster's Third New International Dictionary defines "owner" as "one that has the legal or rightful title whether the possessor or not." Webster's Third New International Dictionary 1612 (unabridged ed. 2002). Relatedly, it defines "ownership" as "the state, relation, or fact of being an owner: lawful claim or title." Id. These are the same definitions we looked to in Michele, where we were presented with a similar question: whether the easement holders in that case could be considered owners for the purposes of the statute at issue in that case, RSA 482-A:11, II (2013). Michele, 168 N.H. at 101, 123 A.3d 255.
In Michele, the easement holders wished to install a seasonal dock in water adjacent to the shoreline property over which they had an easement. Id. at 100, 123 A.3d 255. The easement at issue in Michele provided that the holders of the easement "shall have the right ... to the exclusive use of said parcel of shore frontage for whatever purposes they may desire." Id. at 100, 123 A.3d 255. The easement holders applied to DES for a permit to build the dock, which was granted. Id. On appeal, the landowners argued that DES lacked the authority to issue the permit to the easement holders because only fee owners could apply for a permit. Id. at 101, 123 A.3d 255. The landowners primarily based their argument on RSA 482-A:11, II, which provides that " '[b]efore granting a permit under this chapter, the department may require reasonable proof of ownership by a private landowner-applicant.' " Id. at 101-02, 123 A.3d 255 (quoting RSA 482-A:11, II (emphasis added)). Because the statute did not define "ownership," we looked to the dictionary definitions set forth above. Id. at 102-03, 123 A.3d 255. We acknowledged that these are broad definitions, but, because we "[saw] no reason ... to limit the meaning of the terms when the legislature did not see fit to do so," we concluded that "ownership," as used in RSA chapter 482-A, was not limited to fee ownership, and did not require possession. Id. at 103, 123 A.3d 255. We further concluded in that case that "parties who hold title to a shoreline easement, such as the [easement holders]," were "owners" under RSA 482-A:11, II. Id.
The facts in this case differ significantly from those in Michele. Most importantly, the scope of the easement in this case is far narrower than the one at issue in Michele. In Michele, the easement at issue was expansive, providing the holders of the easement with the legal right to the "exclusive use" of the subject land "for whatever purposes they may desire." Id. at 100, 123 A.3d 255. We observed that "an easement is a nonpossessory right to the use of another's land," and that "a grantee takes by implication whatever rights are reasonably necessary to enable it to enjoy the easement beneficially." Id. at 103, 123 A.3d 255 (quotations omitted). We concluded, therefore, that "anyone who could build a dock under the common law [could] apply for a dock permit," and that, "[g]iven the broad grant of the ... easement," the easement holders "[had] a sufficient ownership interest to obtain a dock permit under RSA chapter 482-A." Id. at 104, 123 A.3d 255.
Here, the easement is non-exclusive and far narrower in scope. Under the REA, the Town and the United States have only a limited right "to enter upon [the] lands at any time to inspect the restored [levee] with a view to its proper maintenance and operation," whereas the Michele easement gave the easement holders "exclusive use" of the land "for whatever purposes they may desire."
*1189 Michele, 168 N.H. at 100, 123 A.3d 255. The expansive easement in Michele granted exclusive rights that are tantamount to fee ownership - with all of its incidental benefits and burdens. In contrast, the easement at issue in this case is both limited and non-exclusive - the fee owner specifically retained ownership and control over the levee. Accordingly, the facts of this case are distinguishable from Michele, and do not lend support to the argument that the Town is an "owner" within the meaning of RSA 482:11-a.
Nor does the rationale of Michele support the argument that the ownership obligations of RSA 482:11-a should be imposed upon the Town. In Michele, it was crucial to our analysis that the right to apply for a dock permit was reasonably necessary for the easement holders to enjoy the full scope of their easement. See id. at 103, 123 A.3d 255. Here, that crucial logical link is absent - the Town is not seeking rights that are reasonably necessary to enjoy its easement and protect its citizens and property; it already holds those rights under the REA. Rather, DES flips the logic of Michele on its head in seeking to impose upon the Town additional ownership obligations under RSA chapter 482. Although DES contends that these obligations "are fully within the scope of the Town's interest," we disagree.
The REA granted only limited rights to the Town and the United States "to enter upon said lands at any time to inspect the restored [levee] with a view to its proper maintenance and operation." The REA did not place any obligations on the Town; rather, it granted rights to both the Town and the United States, reserving for the owner all other property rights that would not interfere with those it had granted to the Town and the United States.
In 1960, the Franconia Paper Company had the capacity to transfer fee ownership - with its attendant rights and obligations - to the Town or any other party, but it did not do so. Rather, the Franconia Paper Company chose to retain ownership and control of the levee, and regarded the levee restoration as a benefit conferred upon it by the United States and the Town. Indeed, the REA recites the restoration of the levee as the consideration received by the company in exchange for granting the access rights to the Town and the United States. Further, in 1971, when the Franconia Paper Company, then operating under a different name, did transfer fee ownership, the new owner explicitly agreed "to assume and discharge the obligations of the [Franconia Paper Company] ... to maintain the [levee] on the northerly bank of said East Branch as constructed by and under the supervision of the United States Army Engineers." Thus, it is evident that the Franconia Paper Company did not understand or intend that, simply by entering into the REA, it had shifted the obligation of ongoing levee repair and maintenance to the Town. See Arcidi v. Town of Rye, 150 N.H. 694, 703, 846 A.2d 535 (2004) (observing that, in order to determine the scope of an easement, we consider the parties' intent in light of the surrounding circumstances at the time the easement was granted).
In support of its position, DES contends that, in the Assurance, the Town "agreed to take responsibility for the [l]evee's ongoing maintenance and repair."[1] However, the fact that the Town undertook certain maintenance obligations in the Assurance does not mean that the additional obligations of "ownership" under *1190 RSA 482:11-a can or should be imposed upon the Town. In the Assurance, a contract that, by its terms, does not convey a property interest, the Town agreed with the Army Corps to maintain and operate the levee "in accordance with regulations prescribed by the Secretary of the Army." The Town did not assume ownership of the levee, nor did it agree to maintain and operate the levee in accordance with state regulations applicable only to "[t]he owner." RSA 482:11-a. Thus, given the Town's limited property interest under the REA, and the Town's limited contractual agreement with the Army Corps, the rationale in Michele does not support imposing the additional obligations of ownership on the Town.
Michele is also distinguishable because it involved a different statute and regulatory regime than is at issue in this case. Unlike RSA 482-A:11, II, the statute at issue in Michele, which applies to "a private landowner-applicant" seeking a wetlands permit, the statute at issue here, RSA 482:11-a, applies only to "[t]he owner" of a dam. If the legislature had intended to place the obligations of RSA 482:11-a on a broader class of persons or entities, it knew how to do so. See, e.g., RSA 482:11, I (2013) (using the terms "owner or contractor"); RSA 482:9 (2013) (using the term "person").
Nonetheless, the dissent argues that the statutory purpose, to lessen flood damage and enhance public safety, supports a broad construction of the word "owner" under the statute. See RSA 482:1 (2013). However, we must observe, as we did in Michele, that there is no evidence that the purpose of RSA 482:11-a is "to change the balance of property rights between fee owners and easement holders from what it was under the common law." Michele, 168 N.H. at 103, 123 A.3d 255. In essence, the dissent would allow a broad statutory purpose to empower DES to impose new ownership obligations on the holder of a limited easement, thereby altering the balance of property rights between the Town and the fee owner(s) - to say nothing of the potential impact on landowner liability. We have cautioned before that " 'it frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law.' " State v. Dor, 165 N.H. 198, 205, 75 A.3d 1125 (2013) (quoting Rodriguez v. United States, 480 U.S. 522, 526, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987) (per curiam )); see also Adoption of T.K.J., 931 P.2d 488, 492 (Colo. App. 1996) (observing that "liberal construction does not permit a court to rewrite the statute"). Therefore, absent evidence that the legislature intended such a result, we believe it would be error to allow the broad statutory purpose to override the specific language chosen by the legislature, which places these obligations only on "[t]he owner." RSA 482:11-a ; see also Carrier, 165 N.H. at 721, 82 A.3d 917 (observing that "[w]e interpret legislative intent from the statute as written").
Moreover, in Michele, we observed that the regulations promulgated by DES under RSA chapter 482-A were consistent with our holding because the regulations contemplated that "only applicants for major projects need be the fee owner; applicants for minor projects, like the [easement holders'] dock, may have a lesser ownership interest." Michele, 168 N.H. at 104, 123 A.3d 255 (emphasis added). Here, the regulations promulgated under RSA chapter 482 do not contemplate different levels of ownership, and therefore do not support the position that the Town's easement gives rise to "ownership" under RSA chapter 482. Moreover, the regulations under RSA chapter 482 imply that the Town's property interest is not sufficient to be deemed "[t]he owner." For example, one of the regulations states that "[i]n lieu of repairing or reconstructing a dam ... the owner may" either "[r]emove the *1191 dam," or "[b]reach or modify the dam." N.H. Admin. R., Env-Wr 302.04(a). Neither of these options appears to be available to the Town, as they fall outside the scope of the Town's right "to enter upon [the] lands at any time to inspect the restored [levee] with a view to its proper maintenance and operation." (Emphasis added.) Thus, the statute and regulatory regime at issue here are distinguishable from Michele, and do not lend support to the argument that the Town's limited access rights make it "[t]he owner" under RSA 482:11-a.
For these reasons, we agree with the Town that Michele does not control the outcome in this case. For the same reasons, a related argument advanced by DES necessarily fails. DES argues that through a "series of transactions," namely the Assurance, the REA, and the 1971 deed, the Town acquired a sufficient ownership interest in the levee to be deemed an "owner" within the meaning of RSA 482:11-a. However, DES provides us with no case, statute, or other legal authority to support the notion that the contractual obligations set forth in the Assurance, when combined with the rights granted to the Town in the REA and the 1971 deed, are sufficient to establish ownership for purposes of RSA 482:11-a. Absent such authority, the "series of transactions" argument appears to rest solely upon Michele, which we have already distinguished.[2]
Despite these distinctions, the dissent contends that Michele controls the outcome of this case, and relies on Michele for the broad proposition that "a person who holds an easement interest in property is an 'owner' thereof." Michele, 168 N.H. at 105, 123 A.3d 255. However, the holding of Michele was that, given the scope of the exclusive rights conferred by the easement, the easement holders had "a sufficient ownership interest to obtain a dock permit under RSA chapter 482-A." Id. at 104, 123 A.3d 255 (emphasis added). The holding in Michele is necessarily confined to the question and facts presented in that case. The broader proposition relied on by the dissent was not essential to the outcome in Michele, is therefore dicta, and it does not control the outcome here. See In re Estate of Norton, 135 N.H. 62, 64, 599 A.2d 138 (1991) (observing that nonessential remarks are non-binding dicta).
Moreover, all easements are not created equal. To employ the traditional law school metaphor of a "bundle of sticks" representing property rights, here the Town holds but one stick out of the bundle. By comparison, the easement holders in Michele held nearly all of the sticks in the bundle - the fee owners retained no rights of use or control over the lakefront property, having transferred those rights to the easement holders. See Michele, 168 N.H. at 100, 123 A.3d 255. Thus, in contrast to Michele, the Town's "single stick" is not a sufficient ownership interest to deem it "[t]he owner" under RSA 482:11-a. Simply put, the Town "owns" an easement, it does not "own" the levee.
*1192 The dissent nonetheless concludes that it is "eminently fair and reasonable" to impose the obligations of RSA 482:11-a upon the Town because the levee was "restored for the benefit of the public using public monies as a result of the vote of the Town's residents." However, the question before us is not whether we think it would be reasonable or fair for the legislature to impose these obligations upon the Town, but rather, whether the legislature did impose the obligations of "ownership" on an entity, such as the Town, with a limited right of access. We conclude that it did not. The legislature made a judgment, and we must interpret the language that it enacted. See Carrier, 165 N.H. at 721, 82 A.3d 917. "The wisdom, effectiveness, and economic desirability of a statute is not for us to decide. Nor may we substitute our judgment for that of the legislature." Smith Insurance, Inc. v. Grievance Committee, 120 N.H. 856, 863, 424 A.2d 816 (1980).
In sum, because the Water Council's conclusion that the Town is an "owner" of the levee under RSA 482:11-a is dependent on its flawed reasoning that Michele controls the outcome in this case, the Town has met its burden to show that the order of the Water Council is clearly unreasonable or unlawful. See RSA 541:13. Accordingly, although we need not decide the precise degree of ownership that makes a person or entity an "owner" for the purposes of RSA 482:11-a, we hold that the limited access easement held by the Town in this case falls short of that threshold. Because our holding on this issue is dispositive of this case, we decline to address the parties' other arguments. Dionne v. City of Manchester, 134 N.H. 225, 230, 589 A.2d 1016 (1991).
Reversed.
HICKS and HANTZ MARCONI, JJ., concurred; LYNN, C.J., and DONOVAN, J., dissented.

The Town contends that DES is impermissibly asking the Court to enforce the terms of the Assurance - an agreement to which DES is not a party. However, DES, in its brief and at oral argument, explicitly disclaims that it is seeking to do so. Rather, DES is using the terms of the Assurance to support its statutory argument.

The dissent protests our rejection of the "series of transactions" argument. However, in an effort to bolster its position, the dissent cites authority that actually supports a different and uncontested proposition - in fact, one already embraced by the majority - that, in determining the scope of an easement, all of the documents and surrounding circumstances should be considered. We agree. The dissent nonetheless fails to consider all of the circumstances surrounding the granting of the access easement. It focuses on two documents, failing to take into account the fact that the Franconia Paper Company explicitly retained ownership and control over the levee in the REA, and that, in the 1971 deed, its successor agreed to assume and discharge the Franconia Paper Company's obligation to maintain the levee.