LYNN, C.J., and DONOVAN, J., dissenting.
At town meeting in March 1960, the residents of the Town of Lincoln (Town) voted to approve "the proposed local protection project for the Restoration of the Flood Control Dike" at issue in this case, and to authorize the selectmen to "acquire any real estate interests for said project." In order to secure federal funding for the restoration project, the selectmen executed an Assurance Agreement with the United States Army Corps of Engineers obligating the Town to, inter alia, "[m]aintain and operate all the works after completion in accordance with regulations prescribed by the Secretary of the Army." In addition, the Town entered into a Right-of-Entry Agreement with the fee owner that granted it and the United States the "right to enter upon the ... lands to perform construction work of any nature necessary in the restoration of the dike, and to enter upon said lands at any time to inspect the restored dike with a view to its proper maintenance and operation." Thereafter, the Army Corps of Engineers restored the dike. No party disputes that the dike in this case constitutes a "dam" within the meaning of RSA 482:11-a, which provides in part that "[t]he owner of a dam shall maintain and repair the dam so that it shall not become a dam in disrepair." RSA 482:11-a (2013). Rather, the parties dispute whether the Water Council erred in ruling that "owner" includes the Town, thereby obligating the Town to maintain and repair the dam pursuant to RSA 482:11-a.
In Appeal of Michele, 168 N.H. 98, 123 A.3d 255 (2015), the court was presented with a similar question: whether the easement holders in that case could be considered "owners" for the purposes of the statute at issue in that case, RSA 482-A:11, II (2013). Michele, 168 N.H. at 101, 123 A.3d 255. Because the term was not defined by *1193 the legislature, the court looked to its common usage, using the dictionary for guidance. Id. at 102, 123 A.3d 255. The court noted that Webster's Third New International Dictionary defines "owner" as "one that has the legal or rightful title whether the possessor or not." Webster's Third New International Dictionary 1612 (unabridged ed. 2002); Michele, 168 N.H. at 102-03, 123 A.3d 255. The court further noted that an easement "is a nonpossessory right to the use of another's land." Michele, 168 N.H. at 103, 123 A.3d 255 (quotation omitted). Thus, the court stated that "a person who holds an easement interest in property is an 'owner' thereof." Id. at 105, 123 A.3d 255.
The majority does not disagree that the Town holds an easement to enter upon the land "to perform construction work of any nature necessary in the restoration of the dike, and to enter upon said lands at any time to inspect the restored dike with a view to its proper maintenance and operation." The majority concludes, however, that the facts in Michele are distinguishable, and therefore Michele should not govern this case. We are not persuaded. As the court explained in Michele, the term "owner" is broadly defined and requires neither fee ownership nor possession. The court noted that there is no reason to limit the meaning of the term when the legislature has not seen fit to do so. Id. at 103, 123 A.3d 255. Rather, in determining whether the easement holder had a sufficient ownership interest to be an "owner," the court looked to the purpose of the statute. Id. at 103-04, 123 A.3d 255.
Similarly, here the legislature has not limited the term "owner." Unlike the majority, we again see no reason to limit the meaning of the term when the legislature did not see fit to do so.[3] See id. at 103, 123 A.3d 255. Thus, we would construe it broadly in accordance with its common usage. See RSA 21:2 (2012). RSA chapter 482 mandates the repair of dams in disrepair in order to, among other things, lessen flood damage and enhance public safety. RSA 482:1 (2013). The issue, accordingly, is whether in light of this purpose the Town has a "sufficient ownership interest" to be considered the "owner" under RSA 482:11-a. See Michele, 168 N.H. at 104, 123 A.3d 255. The majority faults DES for not citing "legal authority to support the notion that the contractual obligations set forth in the Assurance, when combined with the rights granted to the Town in the REA and the 1971 deed, are sufficient to establish ownership for purposes of RSA 482:11-a." Significantly, however, the majority does not contend that such authority does not exist. On the contrary, our case law offers ample support for considering all these documents together, along with all the other circumstances of the parties at the time the easement was granted. See Arcidi v. Town of Rye, 150 N.H. 694, 703, 846 A.2d 535 (2004) ("our task is to determine the parties' intent in light of the surrounding circumstances at the time the easements were granted"); Dumont v. Town of Wolfeboro, 137 N.H. 1, 5, 622 A.2d 1238 (1993) ("Defining the rights of the parties to an expressly deeded easement requires determining the parties' intent in light of circumstances *1194 at the time the easement was granted."). Here, consideration of the entire series of transactions by which the Town acquired its access easement as well as its obligation to the federal government to repair and maintain the levee makes it eminently fair and reasonable to treat the Town as an "owner" of the levee within the meaning of RSA 482:11-a. Indeed, the Town's ownership interest could hardly be more closely tied to the purpose of the statute - the Town's easement is for the purpose of entering upon the land to inspect the restored dike with a view to its proper maintenance and operation. As the majority notes, the easement was obtained in order to satisfy the Town's obligations under the Assurance Agreement with the Army Corps of Engineers, which included the obligation to maintain and operate the dike after completion in accordance with Army regulations. Thus, the easement was intended to permit the Town to carry out its obligation to maintain the dike, thereby lessening flood damage and enhancing public safety, which are stated purposes of RSA chapter 482.
The majority's approach attempts to distance the terms of the Assurance Agreement from the terms of the Right-of-Entry Agreement, rather than reading them together, as the court normally does, see Motion Motors, Inc. v. Berwick, 150 N.H. 771, 777, 846 A.2d 1156 (2004), in determining whether the Town's easement interest is sufficient to constitute the Town an "owner" of the levee within the meaning of RSA 482:11-a. Only by doing so is the majority able to assert that the Town's "only property interest in the levee" is "the right of access set forth in the REA." Supra at 1187 (emphasis added). The reality is that when the two agreements are read together it is clear that the Town voluntarily undertook significant obligations, i.e., to repair and maintain the levee - that accompany its easement right of access. For example, could there be any serious question that the Franconia Paper Company or its successors would not have the right to deny the Town the ability to repair the levee, pursuant to the Town's obligations under the Assurance Agreement, on the ground that doing so would constitute an "overuse" of the easement? The answer obviously is that the paper company would have no such right. Thus, contrary to the majority's intimation, the Town's ownership interest in the property is far more than a right of access simpliciter. In short, when all of the relevant agreements and all of the circumstances are considered together, it is obvious that the Town's interest in the levee represents significantly more than the "single stick" of ownership described by the majority. Under these circumstances, we agree with the Water Council that the Town has a sufficient ownership interest to be considered the "owner" under RSA 482:11-a.[4]
*1195 We are not persuaded that this result is unjust or unreasonable. See RSA 541:13 (2007) (order shall not be set aside unless court is satisfied, by a clear preponderance of evidence before it, that order is unjust or unreasonable). The dike was rebuilt as a result of the vote of the Town residents, presumably because the residents believed it was in the public interest to do so. The Water Council refers in its order to a presentation by the Town in 2016 in which the Town represented that the purpose of the dike is to protect lives and property in the floodway, which consists not only of private dwellings that then generated over $ 311,000 in annual property tax revenue, but also of several parcels of public and Town land. The dike was rebuilt using public monies, obtained in part as a result of the Town's promise to the Army Corps of Engineers to maintain it. In essence, this was a public works project intended for the safety and the benefit of the community. The legislature has imposed a duty, independent of any agreements among the entities involved in this case, to maintain and repair the dike. We find nothing unjust or unreasonable in concluding that the legislature has imposed upon the Town the obligation to maintain and repair a dike restored for the benefit of the public using public monies as a result of the vote of the Town's residents.[5]
As the majority correctly notes, the question before us is whether the legislature imposed the duty to maintain and repair a dam upon an entity, such as the Town, with an easement. The majority further correctly notes that we "interpret legislative intent from the statute as written." Here, the legislature has used the term "owner" to describe those entities who should be charged with maintaining and repairing dams - a term that is broadly defined and that requires neither fee ownership nor possession. Moreover, the legislature has itself stated the purposes of the statute. RSA 482:1 (2013). Thus, our broad construction of the term "owner" is the result of interpreting legislative intent from the statute as written.
Accordingly, we respectfully dissent.

The short answer to the majority's view that "if the legislature had intended to place the obligations of RSA 482:11-a on a broader class of persons or entities, it knew how to do so," supra at 1190, is that this contention is based on circular reasoning. The question is not whether the legislature could have imposed liability upon persons or entities other than "owners," but whether an easement holder is an owner within the meaning of the statute. Because under well-established law an easement holder is an owner of property, the legislature had no reason to use an additional term to capture this form of ownership.

The majority rejects this analysis in part upon the ground that DES is seeking to "impose upon the Town" additional ownership obligations under RSA chapter 482. It also notes that the Town, while obligating itself to maintain the dike in accordance with Army regulations, did not agree to maintain it in accordance with state regulations. And it contends that Franconia Paper Company may not have intended to shift "the obligation of ongoing levee repair and maintenance to the Town." In our view, all of these observations miss the mark. The question before us is not whether the Town agreed in 1960 to maintain the dike in accordance with state regulations or whether Franconia Paper Company believed it had shifted the obligation of repair and maintenance to the Town. Nor is this a case in which DES is creating new obligations to impose upon the Town. Rather, the issue is whether the legislature intended to impose the obligation of maintaining and repairing a dam upon an entity with an easement under the circumstances of this case. The parties do not dispute that the restored dike in this case is a "dam" for purposes of RSA 482:11-a. Thus, the issue is whether the legislature intended "owner" in RSA 482:11-a to apply to the Town under the circumstances of this case. In light of the legislature's use of the broad term "owner" and in light of the stated purpose of the statute, we are persuaded that the legislature did intend that an entity that voluntarily undertook an obligation to the federal government to maintain a dike that it voted to have restored using public monies, and that obtained a property interest for the specific purpose of being able to enter upon the land to carry out that obligation, should fall within the definition of "owner" for the purposes of RSA 482:11-a.

We note that we have not been asked to decide whether any party other than the Town could also be considered "the owner" under RSA 482:11-a, resulting in more than one party having the obligation to maintain and repair the dike, or whether, if such an obligation can be imposed on multiple parties as "owners," an owner that has incurred more than its fair share of the costs of that obligation may seek contribution from the other owners. See RSA 21:3 (Supp. 2018) (words importing the singular number may be applied to several persons or things). Accordingly, we express no opinion as to those questions.